[No. 11350. Department One. March 9, 1914.]

### W. V. BARRY et al., Appellants, v. MAT DANIELSON, Respondent.[1]

SALES—BREACH OF CONDITION—RESCISSION BY PURCHASER — NOTE FOR PURCHASE PRICE—FAILURE OF CONSIDERATION. There is a complete failure of consideration for notes executed for the purchase price of a Howard player piano, which defendant had agreed to purchase, where a piano of a different make was sent and defendant refused to accept the same; since there was a breach of a condition of the contract, authorizing a rescission, and not merely a breach of a collateral warranty entitling the purchaser to damages.

BILLS AND NOTES—HOLDER IN DUE COURSE—EVIDENCE—QUESTION FOR JURY. Whether the plaintiff was the holder in due course of a promissory note given by defendant to a piano manufacturer in another state, consideration for which failed by reason of a breach of a condition of the sale, is a question for the jury, although the payee and holder both testified to the effect that the note was transferred for value before maturity, without notice, where it appears that the holder had notice that the note had been detached from a sales contract, and the note was discounted, under an agreement whereby the holder was to reduce the note to judgment before making any claim on the payee, who had indorsed "without recourse," and who, after the transfer, offered to grant the maker an extension of time for payment.

Appeal from a judgment of the superior court for Kittitas county, Kauffman, J., entered January 11, 1913, upon the verdict of a jury rendered in favor of the defendant, in an action on contract. Affirmed.

*Kern & Henton,* for appellants.

*Pruyn & Hoeffler,* for respondent.

[1]Reported in 139 Pac. 223.

ELLIS, J.—The plaintiffs, claiming to be holders thereof in due course, brought this action to recover on a promissory note. The complaint alleged, in substance, that on October 24, 1911, at Roslyn, Washington, the defendant made to the American Manufacturing Company a note for $550, payable monthly in six installments, the first for $50, and the other five for $100 each; that, about October 28, 1911, the manufacturing company, for valuable consideration, sold and delivered the note to plaintiffs; that since then all the installments have become due and defendant refuses to pay them. The answer alleged that the note was part of a contract entered into between the defendant and the American Manufacturing Company of Chicago, Illinois, whereby the latter agreed to sell the defendant a Howard player piano; that the manufacturing company did not ship a Howard, but a Partin player piano, whereupon the defendant refused to receive the instrument sent him, and informed the company that it was at Roslyn subject to its order; that the manufacturing company knew, at the time of taking defendant's order, that they would not comply with its terms, and shipped him a different piano with intent to cheat and defraud him; that the plaintiffs knew these facts and are only tentative holders of the note and will lose nothing if they fail to recover thereon. The reply traversed these allegations.

By the contract, which is in evidence, the defendant agrees to pay $550, evidenced by the note, for certain circulars, printed matter, advertising, and a Howard player piano to be used in conducting a "piano contest" for advertising purposes. The manufacturing company guarantees that defendant's sales within the next twelve months will be increased by the contest $8,000 in amount, and, in case of failure in such increase, to refund three per cent of every dollar of the shortage, and agrees to send its bond for $500 to cover this guaranty. The defendant agreed to take the shipments promptly and help the manufacturing company in pushing the contest.

Danielson testified that the agent told him he would get a Howard piano, and that he expected to receive that instrument. He introduced a letter which he wrote the manufacturing company December 26, 1911, stating that the piano had arrived, but was not the one specified in the contract, and refusing to accept it. He also introduced a letter written by the manufacturing company dated January 10, 1912, stating that the "Partin" piano which had been sent, is the same as the piano described in the contract as the "Howard," the only difference being in name. The letter urges defendant to start the contest, accuses him of seeking an excuse to avoid the contract, and advises him that it has sold his note, but will extend payments if he will send to it separate notes to replace the one sold, and pay the accrued interest. He testified that, since he wrote the company on December 26, the piano has been held subject to the company's order. He admitted that, in December, he wrote the Citizens' Bank of Lexington, Tennessee, two letters stating that the closing of one of the mines at Roslyn had let three hundred men out of employment, ruining business at that point, and that he had not to date received anything from the manufacturing company. He testified that he knew of the Howard piano at the time, but had never heard of the Partin; that, if he advertised one piano and sold a different one, it would "put us out of business;" that the manufacturing company sent him advertising matter for the Howard piano, which he did not use, having become suspicious.

The deposition of H. D. Barry, a member of the plaintiff firm, was to the effect that the plaintiffs purchased the note from the manufacturing company November 4, 1911, paying the face value, less ten per cent discount. He admitted that the note appeared to have been removed from a contract of which it was a part; that the plaintiffs, a printing firm of Lexington, Tennessee, had done a great deal of printing for the manufacturing company and had printed contracts similar to the one here in question for that com-

pany, but stated that he was not familiar with them; that the plaintiffs occasionally purchase commercial paper as an investment and have previously purchased such paper from the manufacturing company; that they purchased this note after investigating Danielson's credit through commercial agencies; that deponent did not know that any contract existed between the manufacturing company and Danielson relative to the note, and did not know that Danielson was refusing to pay it.

The secretary and treasurer of the American Manufacturing Company deposed that the note in question was sold November 4, 1911, to the plaintiffs; that it was detached from the contract for the purpose of selling it and that the plaintiffs were not notified that it constituted a part of the contract with Danielson; that it made no representations as to the solvency of the maker except as shown by commercial agency reports; that the manufacturing company indorsed the note "without recourse" and did not inform plaintiffs that it would hold the latter harmless if the note proved not good; that, in cases of this kind, the holder of the note agrees to reduce it to judgment before making any claim against the manufacturing company; that the manufacturing company furnished Danielson with a piano in accordance with the specifications of the contract, the only difference being in the name; that the name "Howard" was not used because the makers of the Howard player piano would not permit the use of that name.

The plaintiffs requested an instructed verdict in their favor, which was refused. The jury returned a verdict for the defendant. The plaintiffs appeal.

This appeal presents but two questions: (1) Did the court err in instructing the jury that there was, as a matter of law, a failure of consideration as between the original parties to the note? (2) Did the court err in submitting to the jury the question whether or not the appellants were holders of the note in due course?

I.   Unquestionably, as between the original parties, and
so long as the contract remained executory, the respondent
had the right to stand upon his contract and insist upon
receiving a Howard player piano.   The manufacturing com-
pany had no right to substitute an instrument bearing a
different name on the ground that it was just as good.   The
fact, if it be a fact, that the instrument tendered was just as
good as that contracted for was immaterial.   The respond-
ent testified that he knew of the Howard player piano but
never heard of the Partin.   There was no duty upon him to
try out the Partin to ascertain its qualities as a business
getter by instituting a contest in order to determine whether
it substantially complied with the contract.   The furnishing
of a player not called for in the contract was no compliance
with the contract, substantial or otherwise.   There was no
evidence that there was not a material difference in the credit
or vogue of the two brands of instrument in the public esti-
mation.   The admitted fact that the makers of the Howard
player would not permit the use of that name by the manu-
facturing company was some evidence that there was a spe-
cial value in the name itself.   Had the respondent accepted
the instrument tendered, a different case would be presented.
He could not thereafter have rescinded the contract and sued
for a return of the purchase price.   He then would have been
remitted in his defense to a proof of damages for its fail-
ure to comply with the contract.   *First Church of Christ,
Scientist v. Southern Seating & Cabinet Co.*, 76 Wash.
367, 136 Pac. 127.   Evidence that the Partin player was
just as good and of equal credit with the public as the
Howard would then have been admissible on the question of
damages.   *Lyon v. Bertram*, 61 U. S. 149.

But no such case is presented here.   Upon the failure of
the manufacturing company to furnish a Howard player
piano, the respondent had the right, as a matter of law, to
refuse to take the player tendered and to treat the contract
as breached and abandoned by the company.   The case is

different from sales of staple commodities with warranty of quality. The authorities cited involving warranties are not apposite. That the player should be a Howard player was one of the conditions forming the basis of the contract. It was not a mere collateral warranty of quality. Upon breach of that condition, the respondent had the right to treat the contract as at an end.

"A distinction is also to be noted between warranty and the liability for mere non-performance. Thus where the contract is for the sale of a designated article and another is delivered, there is no warranty to sell the article designated on which a right of action can be based but the remedy is for non-performance." 35 Cyc. 367.

"Warranties are to be distinguished from stipulations in the nature of conditions, in that conditions are statements or premises forming the basis of the contract on a breach of which the parties may treat the contract as at an end, whereas a warranty is collateral to the contract and a breach thereof does not terminate the contract but gives only an action for damages." 35 Cyc. 368.

See, also, *Huyett & Smith Mfg. Co. v. Gray*, 124 N. C. 322, 32 S. E. 718; *Carleton v. Lombard, Ayres & Co.*, 25 N. Y. Supp. 570; and *First Church of Christ, Scientist v. Southern Seating & Cabinet Co.*, supra, in which the distinction which we have noted is clearly recognized. The failure of the manufacturing company to furnish a Howard player on notice that the one sent would not be accepted was a complete breach of the contract, and would have been a complete defense as against the company had it sued on the note. We find no error in the instruction that, as between the original parties, there was a failure of consideration for the note.

II.  On the second question, we are unable to distinguish this case from the cases of *Ireland v. Scharpenberg*, 54 Wash. 558, 103 Pac. 801; *Citzens Sav. Bank v. Houtchens*, 64 Wash. 675, 116 Pac. 866; *National Bank of Commerce v. Drewry*, 70 Wash. 577, 127 Pac. 102, and *Johnson County*

*Sav. Bank v. Rapp,* 47 Wash. 30, 91 Pac. 382. Though a member of the appellant firm testified to the effect that the firm purchased the note in good faith, without knowledge that it was a part of the contract, he admitted that the note itself bore evidence of having been removed from some contract and that appellants knew the character of the business conducted by the manufacturing company. Though he testified that, if the appellants failed in this action they alone would be the losers, appellants' own witness, the secretary and treasurer of the manufacturing company, while also denying that the appellants were told that it would hold them harmless, admitted that, where a discount was allowed as in this case, the purchaser agrees to reduce the note to judgment "before making any claim on us." Moreover, even after the note had been transferred, the manufacturing company wrote the respondent that it would grant an extension of time for payment if he would send new notes to take up the old one and pay accrued interest. This was some evidence that the company still controlled the note. The evidence was ample to take the case to the jury on the question whether the appellants were holders in good faith.

The judgment is affirmed.

CROW, C. J., MAIN, CHADWICK, and GOSE, JJ., concur.