[No. 8058.   Department Two.   August 26, 1909.]

FRANK N. IRELAND *et al.*, *Respondents*, v. KARL SCHARPENBERG *et al.*, *Appellants*.[1]

BILLS AND NOTES—FRAUD—BONA FIDE PURCHASER—BURDEN OF PROOF—EVIDENCE—SUFFICIENCY. In an action upon a note procured by fraud, the burden being upon the plaintiff to show that he is the holder in due course, it is error for the court to decide, as a matter of law, that the plaintiff had no notice of the fraud, where there was no evidence as to the manner, consideration, or time of the purchase of the note, save that of one of the plaintiffs, and one installment of interest was past due at the time; since the credibility of the witness would be for the jury, although he was not contradicted by any direct evidence.

BILLS AND NOTES—NOTICE OF DISHONOR—DEFAULT IN INTEREST. Default in the payment of interest is not ·notice to a holder in due course of dishonor, but it is competent upon the question of good faith.

BILLS AND NOTES—FRAUD—BONA FIDE PURCHASER—EVIDENCE—ADMISSIBILITY. In an action upon a note, upon an issue as to whether the plaintiffs were holders in due course, it being claimed that they were mere figureheads and without interest in the suit, it is error to exclude evidence that $200 had been deposited with the clerk as security for costs and that the plaintiffs knew nothing about the deposit.

SALES—FRAUD—EVIDENCE—ADMISSIBILITY. Upon the defense of fraudulent representations in the sale of a horse, made by the agent of the vendors, printed advertising cards given to the vendees at the

[1]Reported in 103 Pac. 801.

time, showing the agent's name and describing the vendor's business and the value of its horses, are admissible as part of the representations.

BILLS AND NOTES—EVIDENCE—CONSIDERATION. Upon the defense of fraud in an action upon a note, which had been detached from the written contract in consideration of which the note was given, the defendants are entitled to introduce the contract in evidence as part of the original transaction and to show the consideration for the note.

Appeal from a judgment of the superior court for Spokane county, Hinkle, J., entered December 1, 1908, upon the verdict of a jury rendered in favor of the plaintiffs, in an action on a promissory note. Reversed.

*John M. Gleeson (Joseph F. Morton, of counsel), for appellants.*

*Cordiner & Cordiner and J. C. Kleber (John W. Mathews, of counsel), for respondents.*

PARKER, J.—The plaintiffs are residents of the state of Illinois, engaged in the brokerage and banking business, while the defendants are farmers residing in Spokane county, this state. On the 7th day of May, 1906, the defendants signed a paper writing in words and figures as follows:

STOCKHOLDERS' PURCHASING CONTRACT

No. 910                              Spokane, Wash., May 7th, 1906.

After a good and satisfactory examination of the Belgian Stallion named Jules D'Or 1635 No. (25894) owned by The Burgess Importing Co., of Wenona, Illinois, and recognizing his value as a means of improving our horse stock, we, the undersigned subscribers, hereby purchase said Stallion of The Burgess Importing Co. accordingly, and we hereby authorize the delivery of said horse to any one of the subscribers hereto.

Capital Stock, $3200.00.                    Shares $400.00 Each.

.....................[Perforated Line].........................

No. 910      $3200.00.          Spokane, Wash., May 7th, 1906.

For Value Received, we or either of us promise to pay to the order of Rob't. Burgess and Son the sum of Thirty Two Hundred Dollars in payments as follows:

One Thousand and Sixty Six Dollars,           Sept. 1st, 1907.
One Thousand and Sixty Seven Dollars,         Sept. 1st, 1908.
One Thousand and Sixty Seven Dollars,         Sept. 1st, 1909.
with interest at the rate of 8 per cent, payable annually.

    J. W. Hatch                    Samuel Greene
    J. Humphries                   John W. Haynes
    Henry Binger                   Charles Terry
    (Guernsey Dairy Co.)
    (Per Karl Scharpenberg).       B 156           11702.

On the back of the part which is above the perforated line was indorsed the following:

#### SUBSCRIBER'S RECEIPT

This is to Certify that I, a subscriber, on the note for the purchase price of the Belgian Stallion No. 1635 (25894) named Jules D'Or, do hereby for myself and associates, acknowledge the delivery of said horse to us by The Burgess Importing Co., in good health and condition, and according to contract, and as represented to us by the salesman of said firm.

Dated this 15th day of May, 1906.           S. Greene.

On the date of the making of the note there was credited $400 on the back thereof. Thereafter the note was detached from the upper portion and assigned by the payees to the plaintiffs. In April, 1908, plaintiffs commenced this action to recover the balance of the first installment of the principal and interest as appeared to be due by the terms of the note, alleging in their complaint the usual facts as to the making of the note, nonpayment of the first installment and interest, and further alleging that, before the note became due in the state of Illinois, for value, the said Robert Burgess & Son indorsed and delivered said note to said plaintiffs, and said plaintiffs are now the holders in due course and the owners of said note.

This last allegation is denied by the answer, which also contains other denials, though the affirmative allegations of the answer constitute the principal defense, and are in substance as follows: That on the 1st day of May, 1906, E. V. Larson and M. C. Gray came to the homes of the defendants and represented that the Burgess-Gray Horse Importing Company was composed of Robert Burgess and son and M. C.

Gray of Pullman, Washington, having in their possession
a certain horse which they were desirous of selling under
certain conditions, and claimed that the Burgess-Gray Im-
porting Company was the owner of said horse and desired
to organize an association among the farmers in the locality
where these defendants resided, for the purpose of selling said
horse; and further informed these defendants that the pur-
chase price of said horse should be divided into shares in the
nature of a stock transaction, and that all of said stock
should be subscribed by different parties before the sale could
be made; that the defendants tentatively became members
of the association, but a sufficient amount of stock for the
purchase of said horse was not subscribed for by the defend-
ants, and the said Larson and Gray undertook to reduce the
price, and credited thereon the sum of $400 in order that a
contract of purchase might be made; that thereafter the
Burgess-Gray Importing Company, through their agent, the
said Gray, undertook to sell to the plaintiffs said horse as a
stock horse for the use of breeding purposes only, for the
sum of $3,200, less the $400 which was credited on the note
given as the purchase price therefor; that the Burgess-Gray
Horse Importing Company knew at the time that said horse
was diseased and was of no value whatever for said pur-
pose, and that the disease and the maladies from which
said horse was suffering and was afflicted were of a latent
nature and could not be told by casual observation such as
was made by the defendants; that at said times and after-
wards said Gray, as agent for said company, represented and
stated to the defendants, and each of them, that, if for any
reason the said horse proved unsatisfactory or was afflicted
with any disease or malady whatsoever, he might be re-
turned to Pullman, Washington, and another horse of like
appearance, sound and well, would be furnished the defend-
ants without further cost; that the defendants, believing said
fraudulent representations, received said horse and signed the

36—54 WASH.

contract and note above set forth; that, for convenience and
at the request of the said Burgess Horse Importing Company
and the said Gray, the contract was made payable to Robert
Burgess & Son, who were a part of, and represented to be a
part of, said Burgess Horse Importing Company; that this
was the only contract ever given by the defendants, or either
of them, by which they promised to pay to Robert Burgess &
Son any sum whatsoever; and if the plaintiffs have any note,
as represented in their pleading, it was cut from the said
contract without the consent of the defendants, or either of
them; that subsequently said horse proved to be unsatisfac-
tory to the defendants, and of no value whatsoever for the
purpose for which it was sold; that thereafter said Gray
came to the homes of the defendants at their request, and
observed the condition of the horse, acknowledged that he
was so diseased, and of no account whatsoever, which was
true, and stated that they might return the horse to Pull-
man and receive in exchange therefor a horse of similar ap-
pearance, but sound and well; that thereafter, on June 13,
1906, the defendants returned said horse to Gray at Pull-
man, and demanded of Gray a similar horse of like breed and
appearance, having as great commercial value as the former
horse would have had had he been sound and well; that said
demand was not complied with, nor was any horse offered to
be delivered to them, save and except a two-year old colt of
a different breed and of a value not to exceed $600, which
said defendants refused to accept, and thereupon demanded
a return of their contract and note which had been signed,
which was refused; that no other consideration whatsoever
was ever given for said contract and note.

The defendants further alleged, on information and belief,
that the plaintiffs are endeavoring to assist said Burgess-
Gray Horse Importing Company in defrauding these defend-
ants, and are mere figureheads and have no interest in this
litigation. The reply of plaintiffs denies the affirmative alle-
gations of the answer. It will be noticed that the names of the

owner or owners of the horse undergo several changes in the answer, but the reply of the plaintiffs admits that the horse was sold by Robert Burgess & Son to the defendants. It is also evident from the proofs that these various names represent the same owners of the horse. The cause proceeded to trial before the court and a jury upon these issues, at the conclusion of which, upon motion of counsel for plaintiffs, the court, over the objection of defendants' counsel, peremptorily instructed the jury as follows:

"Gentlemen of the Jury, the plaintiffs having proved the making of the note, the purchase of it in good faith in the ordinary course of business, and without any notice whatever of any infirmities or defects in it, and the defendants having for that reason failed to show themselves entitled to introduce the matters that they claim as a defense to the note to the consideration of the jury, the court instructs you that all there is for you to do would be to retire to your room, select a foreman, figure out the amount that is due upon the note, and return a verdict for the plaintiffs for that amount."

Exception was noted by the defendants, verdict and judgment were rendered and entered accordingly, after which motion for new trial was made by defendants and by the court overruled, exception being noted, and thereupon the cause was brought here by this appeal.

All of the evidence taken upon the trial is brought here by statement of facts, upon which we are asked to review the errors assigned. The principal contentions of appellants arise upon the alleged error of the learned trial court in taking the case from the jury, and thereby in effect deciding as a matter of law that the defendants had conclusively proven the purchase of the note in good faith before maturity without notice of infirmities. This presents two questions: *First*: Was the evidence of fraud in the procuring of the note sufficient to entitle defendants to have that question submitted to the jury, had the suit been between the original parties only? *Second*: Was the evidence touching the good faith of the plaintiffs in the purchase of the note and as to

its purchase in due course before maturity such as to entitle defendants to have that question submitted to the jury? If these questions be answered in the affirmative, then the trial court was in error in disposing of the cause as a matter of law.

So far as the first question is concerned, we do not understand from the remarks of the learned trial judge that he expressed any opinion as to whether or not the evidence was sufficient to carry the case to the jury upon the defense of fraud, had the suit been between the original parties. This question, however, we deem necessary to determine before passing upon the rights of the respondents, so far as such rights are dependent upon their being innocent holders; for, if the defense of fraud did not have sufficient evidence in its support for submission to the jury, there would be no infirmity in the note for the respondents to take notice of, and the manner and time of their acquiring the note would be out of the case. To this end we have carefully read all of the evidence produced in support of the allegations of fraud pleaded as a defense in appellants' answer, and are of the opinion that there was abundant evidence, if believed by the jury, to support such allegations, such as would render it clearly erroneous not to submit that question to the jury if the original parties alone were in the cause.

This brings us to the second question: Was the court in error in its peremptory instruction to the jury, and thus deciding as a matter of law favorably to respondents? We are constrained to think error was so committed. It is to be remembered that the allegation of the respondents in their complaint, in substance that they purchased the note before maturity for value in due course, and that they were the owners, is denied by the answer, and thus becomes one of the principal issues of fact in the case, upon which, as we will later see, the respondents had the burden of proof. Without attempting to review in detail the evidence introduced upon this branch of the case, we will call attention to some

things appearing therein which we regard as of controlling influence. There was no evidence as to the manner, consideration, or time of purchase of the note by the respondents, save that given by themselves. Frank N. Ireland testified as to the amount paid for the note, and that it was purchased of Robert Burgess & Son, August 1, 1907, without any notice of there being any defense thereto. It will be noticed this was after interest was some three months in default, but before maturity of the first installment. Charles Ireland testified to substantially the same effect, but he admitted upon cross-examination that the knowledge he had in this respect was gained from their records, and it was from them he was testifying. No record was produced, so we have no competent evidence of the purchase, or time of purchase, of this note save that of Frank N. Ireland, who, of course, is a witness directly interested in the result of the cause. His testimony in this regard was not contradicted by any direct evidence. There was, however, the circumstance of the interest being in default some three months, as well as other minor circumstances which the jury would have been warranted in taking into consideration in weighing the testimony of Frank N. Ireland, even though not directly contradicted, had the cause been submitted to them. In other words, the jury would not have been required to take the testimony of Frank N. Ireland in this regard as conclusive proof, and there was no other upon that question. Section 59 of our negotiable instrument law, page 351, Laws of 1899, among other things provides:

"When it is shown that the title of any person who has negotiated the instrument was defective, the burden is on the holder to prove that he or some person under whom he claims acquired the title as holder in due course."

This is but a statement of the general rule fixing the burden of proof, and which has special force when applied to a case where fraud is involved in the procuring of the note. *Keene v. Behan,* 40 Wash. 505, 82 Pac. 884; *City National*

*Bank v. Jordan* (Iowa), 117 N. W. 758; *Canajoharie Nat. Bank v. Diefendorf*, 123 N. Y. 191, 25 N. E. 402. See, also, note to same case in 10 L. R. A. 676. On page 200 of the official report of the case last cited, the court says:

"The claim that the plaintiff's cashier was a disinterested witness, whose testimony must be regarded as controlling if not contradicted, cannot be sustained. Aside from the alleged improbability of his statements, he was the financial agent of the plaintiff and the owner of one-fifth of its capital stock, and aside from his direct interest, responsible to his principal for the care, fidelity and prudence with which he discharged his official duties. His interest in the transaction was co-extensive with that of the plaintiff, and brings him directly within the cases which hold that the credibility of such a witness is a question for the jury to determine."

The supreme court of Iowa, expressing similar views in the case of *McNight v. Parsons*, 136 Iowa 390, 113 N. W. 858, uses this language:

"The testimony of the cashier of the bank that he or the bank purchased the note for value before maturity, even though he be not disputed by any other witness to the transaction, is not necessarily sufficient to enable the court to say as a matter of law that he received it in good faith. Such evidence does not negative notice or knowledge on part of other officers of the bank. Moreover, the bank being an interested party, the credibility of the testimony of the cashier was a matter for the jury to pass upon in the light of all the facts and circumstances surrounding the matter under inquiry. In *Joy v. Diefendorf*, 130 N. Y. 6, 28 N. E. 602, 27 Am. St. Rep. 484, the plaintiff sought by his own evidence to prove the circumstances attesting good faith of his possession of the note; and in *Bank v. Diefendorf*, 123 N. Y. 191, 25 N. E. 402, 10 L. R. A. 676, the bank gave like evidence by its cashier, and it was held in each case that even though undisputed the credibility of such evidence and its sufficiency to satisfy the burden of proof resting upon the plaintiff were matters for the jury, and not a question of law to be disposed of by the court. See, also, *Elwood v. Telegraph Co.*, 45 N. Y. 549, 6 Am. Rep. 140. It follows, therefore, that, so far as plaintiff's case rested on the indorsement of the note

from Bigler & Sons to the bank, the motion to direct a verdict was improperly sustained. . . . Where the taint of fraud once attaches to a written contract, negotiable or otherwise, the law is careful to require every person who seeks to profit by it to show that he comes into court with clean hands. Speaking to this point, the supreme court of Indiana says: 'It would be a departure from principle to hold that the maker must prove that the holder had notice of the fraud. Whether he had notice or not is a matter peculiarly within his own knowledge. It needs no more than a bare statement of the proposition that the plaintiff's possession or nonpossession of notice is a matter peculiarly within his own knowledge to establish it to the satisfaction of a candid mind; and if this proposition be established, then it must follow that proof should come from him, for few rules of law are better settled than that a party whose cause of action or defense rests upon facts peculiarly within his own knowledge must prove those facts.' *Giberson v. Jolley*, 120 Ind. 301, 22 N. E. 306. While it is not to be presumed that a witness will testify falsely, yet it may be presumed that the testimony of a party will more or less be colored by his interests or bias, and, generally speaking, where such testimony is offered to overcome an unfavorable presumption of law or evidence, or to satisfy the burden of proof which the law casts upon him, the question as to his credibility and of the weight and effect of his testimony is for the jury."

We are of the opinion that the appellants were entitled to have the question of good faith of the respondents in the purchase of the note submitted to the jury, together with the question of whether or not it was originally obtained by fraud, and that neither of these questions, in the light of this record, could be determined by the court as a matter of law.

Learned counsel for appellants contend that the default in the payment of interests was of itself notice of dishonor. We do not agree with this contention. *Spencer v. Alki Point Transp. Co.*, 53 Wash. 77, 101 Pac. 509. Such facts appearing by the instrument, might or might not be sufficient for such showing of dishonor. The weight to be given to such facts might be largely influenced by the length of time such interest had remained unpaid after its maturity. While

we hold mere nonpayment of interest after maturity thereof does not of itself show the paper as being dishonored, it nevertheless is a circumstance of some weight to be considered by the jury in determining the good faith of the purchaser, as we have above indicated.

Since our view of this cause will require a new trial, it becomes necessary to briefly notice some of the errors assigned by appellants' counsel upon the court's ruling in the rejection of certain evidence offered by them. Among other things alleged by way of affirmative defense, was that the plaintiffs are endeavoring to assist in defrauding defendants, and are mere figureheads, and have no interest in this litigation, except that they hope to cheat, wrong, and defraud the defendants. Among other things, appellants offered to show, in support of this allegation, which the court refused to allow them to do, that $200 had been deposited in the office of the clerk of the court under the name of Ireland & Son, as security for costs, they being nonresidents, and that they did not know anything about such deposit or where it came from. This was but a slight circumstance, it is true, but nevertheless we think that appellants had the right to show it, in view of their allegations.

When Larson and Gray visited the defendants and entered upon negotiation for the sale of the horse, they brought with them and distributed among defendants certain cards in the nature of advertising or business cards, on which was printed the words: "Burgess & Gray Horse Importing Co.," in large type, and underneath, the words: "Robert Burgess & Son, Wenona, Illinois," and "M. C. Gray, Pullman, Washington," together with other printed matter setting forth the nature of their business, with statements as to the value and worth of their horses generally. One of these cards was offered by appellants and admitted in evidence, in connection with testimony of their distribution, and afterwards by the court stricken out upon motion of respondents' attorneys, appellants' counsel objecting thereto. This we regard

as error on the part of the court. It seems to us this card was admissible, together with the other evidence, as part of the representations made by Gray during his negotiations with defendants, considering the evidence touching the relationship of Gray with Robert Burgess & Son.

We have referred to the part of the writing which was detached from the note before assignment. This slip was offered in evidence by appellants and admitted, and afterwards by the court stricken out upon motion of respondents' attorneys, which is claimed by appellants as error. It seems to us that appellants were entitled to have this slip in evidence, since it constitutes a part of the original transaction and shows the consideration for which the note was given.

We conclude that the judgment of the lower court must be reversed, and appellants awarded a new trial. For that purpose the cause is remanded to the trial court with instructions to proceed in accordance with this opinion.

RUDKIN, C. J., DUNBAR, MOUNT, and CROW, JJ., concur.