[No. 9477.   Department Two.   September 7, 1911.]

## JOHN J. WARD *et al.*, *Appellants*, v. GEORGE F. THORNDYKE *et al.*, *Respondents*.[1]

MECHANICS' LIENS—WAIVER—NOTE IN PAYMENT—STATUTES. Where work is done on a building under an oral agreement that part cash and a note for the balance would be received in payment for the work, a mechanics' lien is waived if it was so specified in the note, under Rem. & Bal. Code, § 1143, providing that the taking of a note for labor performed or material furnished for which a lien is created shall not discharge the lien unless expressly received as payment and so specified therein.

TENDER—NECESSITY—EXCUSE. Formal tender of a note in performance of a contract is not necessary where it appears that the tender would have been refused.

MECHANICS' LIENS—EXTRAS. In an action to foreclose a mechanics' lien, it is error to refuse to allow for extra work required by the architect in charge.

INTEREST—EFFECT OF TENDER—MECHANICS' LIENS. Where a mechanics' lien was waived under an agreement to pay $200 cash on the completion of the work with a note for the balance, tender of the $200 stops interest thereon, but the balance draws interest from the date of the completion of the work.

Appeal from a judgment of the superior court for King county, Steiner, J., entered January 28, 1911, in favor of the defendants, after a trial on the merits before the court without a jury, in an action to foreclose a mechanics' lien. Modified.

*Roberts, Battle, Hulbert & Tennant*, for appellants.

*H. R. Clise* and *C. K. Poe*, for respondents.

ELLIS, J.—Action by appellants to recover $406.80, with interest on $200 thereof from December 19, 1909, and on $206.80 thereof from February 15, 1909, at six per cent per annum, and to foreclose a mechanics' lien. The claim was for plumbing and installing a heating plant in the residence of respondents under a verbal contract.

[1]Reported in 117 Pac. 593.

The plaintiffs claim that the agreement was that they should do the work for $380, of which $200 was to be paid in cash when the roughing in was completed, and the remainder by a secured note, payable in sixty days after completion of the work; that when the roughing in was completed they were notified by the architect to proceed with the work and when completed the whole contract price would be paid in cash; that during the work, two extras were authorized, one for $14.80, increased price for a larger boiler than at first contemplated, and the other, $12, for setting and removing two radiators for drying the plastering.

Respondents claim that the agreement was that, when the work was completed, they should pay at least one-half of the contract price in cash, and give an unsecured note, payable in ninety days from that date, for the balance  They admit the $14.80 extra, but deny the $12 item.  They allege tender of $200 and of the note for the balance when the work was completed.  They claim that the appellants were not entitled to interest, costs, or lien.

The trial court entered a judgment in favor of plaintiffs for $394.80, being the contract price and the $14.80 extra, refused to allow the $12 item, the interest or costs, and ordered the lien cancelled, and gave the respondents judgment for their costs.

From the evidence, which we will cover briefly, it appears that the agreement was made on November 17, 1909, by Ward for the appellants, and Thorndyke for respondents, in the presence of one Everett, the architect.  Ward testified that the original agreement was as claimed by the appellants.  Thorndyke testified that the agreement was as claimed by the respondents.  Everett testified as follows: "I understood that on the completion of the work Mr. Ward and Scherer were to receive one-half cash and the balance a ninety day note."  As to the claim that the contract was changed, Ward testified that when the roughing in was completed on December 19, 1909, the contract was modified by an agreement between

Ward and the architect that the whole sum should be paid when the work was completed; that this agreement was made by telephone, and that he did not know whether it was ever mentioned to Thorndyke or not. Thorndyke testified that he never authorized such a change, and Everett testified that the original agreement was never modified to his knowledge, except to allow the $14.80 extra on the boiler. The appellants claim that the work was completed on February 15, 1910. There was no evidence on this point except a letter left at Thorndyke's office by Ward when Thorndyke was out on February 26, 1910, asking for settlement, which would indicate that the work had only then been completed.

As to the tender, Ward testified that the day after the work was completed—the day after he had visited Thorndyke's office—Thorndyke came to the store of Ward & Scherer and made a tender of $200 in gold, and offered to give a ninety-day unsecured note for the balance, and that he, Ward, absolutely refused to accept it; that Thorndyke did not actually tender the note, but that if he had it would not have been accepted. Thorndyke testified that he had the note with him when he made the tender of the money, and that Ward refused to look at it. The appellants claim that the note offered was dated March 9, 1910, but there is no evidence to support this claim. As to the $12 item, Ward testified that, before the building was ready for all the radiators to be installed, the architect telephoned him to set two radiators to dry the plastering, and to take them down again when the plaster was dry, and promised to allow an extra for the work; that the work was done at an actual cost to appellants of $12; that at the time of the tender of the money, Thorndyke offered to include in the note for the balance both the $14.80 and the $12 items. His partner, Scherer, and their bookkeeper, one Bodin, who were present at the time, corroborate Ward in this. Thorndyke testified that he never authorized Everett to enter into any contract for him in connection with the building. Everett testified that he ordered the two radiators installed, but did

not promise to pay extra for the work; that the radiators were never again disconnected, but remained as part of the permanent heating plant; and that he considered $2 a reasonable bill for setting the two radiators in advance of setting the others.

As to the lien, Ward testified that when the agreement was being discussed he refused to agree to accept a ninety-day note unsecured, and told Thorndyke "that would entirely wipe out our lien rights on that property if we took your note for ninety days. I couldn't do that." Thorndyke testified that no mention was made to him of a lien, then or at any other time; that Ward at first spoke of a sixty-day secured note, but said that since seeing Thorndyke and finding he was a business man, he would take his note without security. Everett testified that he did not remember of anything being said about liens. The lien was filed March 12, 1910, and is in evidence. It was stipulated that, if the court allowed foreclosure, he should fix the amount of the attorney's fee.

There are no findings of fact in the record, but it is evident from the judgment that the court found for the respondents on every controverted point. We think the court would have been justified in finding, and should have found, that the original agreement was that, on the completion of the work, Thorndyke should pay $200 cash, and that his unsecured ninety-day note for the balance would be accepted; that this contract was never modified except to allow the extras; that a sufficient tender of the $200 and of the ninety-day note was made about the time of the completion of the work; that in making the tender, Thorndyke offered to include in the note both of the items for extras, neither of which was then disputed; that no lien was contemplated by either party; and that both of them then understood that the $200 and an unsecured ninety-day note should be received as payment

Counsel for appellants cite Rem. & Bal. Code, § 1143, which is as follows:

"The taking of a promissory note or other evidence of in-

debtedness for any labor performed or material furnished for which lien is created by law, shall not discharge the lien therefor, unless expressly received as payment and so specified therein."

They contend that the taking of a note would not waive the lien unless so specified in the note, and we think that this is a correct construction of the statute. But in this case the evidence justifies the inference that the original agreement was that the $200 and the note should be received in payment for the work, which would imply a waiver of the lien, and Thorndyke would have had the right to so specify in the note. He offered to give a note in performance of his contract. Ward refused to look at it, and the note is not in evidence. We are justified in assuming that it conformed to the contract. We think the court was warranted in holding that the tender of payment was according to the contract and precluded a lien. No formal tender of the note was necessary, since Ward's testimony shows that any such tender would have been idle. *Weinberg v. Naher*, 51 Wash. 591, 99 Pac. 736, 22 L. R. A. (N. S.) 956; *Griesemer v. Mutual Life Ins. Co.*, 10 Wash. 202, 38 Pac. 1031.

The trial court, however, erred in not including in the judgment the $12 item, and in not allowing interest on all of the debt excepting the $200 which was tendered. As to that sum, the tender, when due, prevents the recovery of interest. The note for the balance, which would have included both extras had it been accepted, would, of course, have borne interest from the completion of the work February 26, 1910, and the judgment should have included this.

The cause is remanded with direction that the judgment be modified in these particulars. Appellants may recover their costs on this appeal.

DUNBAR, C. J., CROW, CHADWICK, and MORRIS, JJ., concur.