[No. 23765. Department One. June 30, 1932.]

SPOKANE SECURITY FINANCE COMPANY, *Respondent,* v. EDITH H. DELANO, *Appellant.*[1]

[1]Reported in 12 P. (2d) 924.

*Rex S. Roudebush,* for appellant.
*Harry H. Johnston,* for respondent.

HERMAN, J.—The plaintiff, Spokane Security Finance Company, sued defendant, Edith H. DeLano, a widow, upon a promissory note for three hundred dollars. Plaintiff claimed to be a holder of the note in due course. During the trial, defendant introduced evidence in support of her affirmative defense, and at the close of such testimony plaintiff challenged the sufficiency of defendant's evidence by moving that the case be taken from the jury and judgment entered for plaintiff. This motion was granted, and from the judgment in favor of plaintiff entered pursuant thereto, defendant has appealed.

The assignments of error present the question whether the trial court erred in taking the case from the jury and entering judgment for respondent.

Respondent corporation made formal proof of its claim that it was a holder of the note in due course. The appellant's testimony showed that she was a widow who supported herself by keeping summer boarders at a small resort in Pierce county; that the note in question was given as part consideration for five thousand shares of Primus Placer Gold Mining

Company stock at ten cents a share. There was testimony introduced to the effect that, although the mine had been represented to appellant as being rich and valuable and certain to have an increased value, it was valueless, and was known to the sellers to be worthless.

There was evidence that the sale of the stock to Mrs. DeLano was simply part of a sales program to cheat such people as might be trapped by the various fraudulent representations which were made; that M. W. Oseran, the salesman and the payee on the note, was actively associated with C. R. Paulson in the sale of the mining stock; that, as part of the selling scheme, it was falsely represented to the appellant that C. R. Paulson was the Spokane business man who erected an office building in Spokane.

There was also evidence that it was part of the program to get into the hands of a Spokane company any notes for stock, in order that collections could be enforced for the benefit of all concerned; that the note was endorsed by Oseran to Paulson, and by Paulson to his brother-in-law, F. M. Mohr, president of respondent corporation, and by F. M. Mohr to the corporation.

There was ample evidence to warrant a jury in returning a verdict predicated upon the theory that the appellant was defrauded. In *Harris v. Saunders,* 108 Wash. 195, 182 Pac. 949, the court said:

"The trial judge, therefore, was warranted in sustaining a challenge to the sufficiency of the evidence only if there was no substantial evidence on the part of the appellant tending to support the material issues. Disputes in the evidence, and disputed inferences arising from the evidence, were for the jury to determine, not the trial judge. It must be remembered, also, that, in passing upon this question, the appellant was entitled to have considered, where the evidence is contradictory, or where favorable or unfavorable infer-

ences can be drawn from the evidence, that part of the evidence most favorable to his contention.''

After the introduction of testimony by appellant to the effect that the payee of the note obtained it by fraud, respondent corporation could no longer rest upon the ordinary presumption that the transferee of a promissory note has acquired it in good faith, without notice of any infirmity or defect, but was required to show affirmatively its good faith.

''Ordinarily the presumption is that the transferee of a bill of exchange or promissory note acquired it in good faith, without notice of any infirmity or defect. And the burden of proof is on the party asserting the contrary to show facts impeaching the holder's title. But the burden of making out good faith is always upon the party asserting his title as a bona fide holder, in a case where it is admitted or the proof shows that the paper has been fraudulently, feloniously, or illegally obtained from its maker or owner. Such a party makes out his title by presumptions, until it is impeached by evidence showing that the paper had a fraudulent inception, and when this is done the plaintiff can no longer rest upon the presumptions, but must show affirmatively his good faith. By such proof of fraud or illegality a prima facie case of notice to the holder is made out, and the burden of proving that he took without notice is thrown upon him. He must show that he came by the possession of the note fairly, and without any knowledge of the fraud or illegality, and unattended with any circumstances justly calculated to awaken suspicion.'' 3 R. C. L. 1033.

''While the production of a negotiable instrument, properly indorsed, is prima facie evidence of the holder's right to recover against the maker, yet according to the prevailing view the maker may compel the holder to support his prima facie case with further evidence, by showing a defense that would have been available against the payee. The reason for this distinction, as generally given, is that a presumption exists that a fraudulent payee would be likely to shield

himself by placing the instrument in the hands of another person to sue upon it. After proof that it was once in the hands of a fraudulent holder, it may justly be presumed to continue in the hands of a holder of that character until the contrary be proved. The position of the holder of negotiable paper is of an exceptional character. He may acquire a title through a thief, and yet maintain it against the original owner. But his possession is deemed to be not enough to support a recovery, after it once appears that he must trace title through fraudulent practices and unclean hands. The rule is not one that abridges the holder's substantive right as determined by the law merchant; it merely puts the burden of proof upon the one who knows the facts. If he is an innocent holder, the fact that the maker has a complete defense against the payee cannot affect him. From the character and importance of such a defense, this would seem to be a reasonable requirement, and it is approved by a large majority of the modern authorities." 3 R. C. L. 1038.

In *Ireland v. Scharpenberg,* 54 Wash. 558, 103 Pac. 801, the court said:

"This brings us to the second question: Was the court in error in its peremptory instruction to the jury, and thus deciding as a matter of law favorably to respondents? We are constrained to think error was so committed. It is to be remembered that the allegation of the respondents in their complaint, in substance that they purchased the note before maturity for value in due course, and that they were the owners, is denied by the answer, and thus becomes one of the principal issues of fact in the case, upon which, as we will later see, the respondents had the burden of proof. Without attempting to review in detail the evidence introduced upon this branch of the case, we will call attention to some things appearing therein which we regard as of controlling influence. There was no evidence as to the manner, consideration, or time of purchase of the note by the respondents, save that given by themselves. Frank N. Ireland testified as to the amount paid for the note, and that it was purchased of Robert Burgess & Sons, August 1, 1907, without any notice of there

being any defense thereto. . . . His testimony in this regard was not contradicted by any direct evidence. . . . In other words, the jury would not have been required to take the testimony of Frank N. Ireland in this regard as conclusive proof, and there was no other upon that question. Section 59 of our negotiable instrument law, page 351, Laws of 1899, among other things provides:

" 'When it is shown that the title of any person who has negotiated the instrument was defective, the burden is on the holder to prove that he or some person under whom he claims acquired the title as holder in due course.'

"This is but a statement of the general rule fixing the burden of proof, and which has special force when applied to a case where fraud is involved in the procuring of the note. *Keene v. Behan,* 40 Wash. 505, 82 Pac. 884; *City National Bank v. Jordan* (Iowa), 117 N. W. 758; *Canajoharie Nat. Bank v. Diefendorf,* 123 N. Y. 191, 25 N. E. 402. See, also, note to same case in 10 L. R. A. 676."

On behalf of respondent, it is contended that correspondence with appellant subsequent to the time she signed and delivered the note estops her from contending that the respondent did not acquire the note in good faith and without notice of any infirmity or defect. The note was dated December 16, 1930, and was due ninety days from the date of making. December 27, 1930, respondent wrote to Mrs. DeLano, stating that it had bought the note and asking her if she could pay it before it was due. January 16, 1931, respondent again wrote asking appellant if it would be possible for her to pay the note. January 24, 1931, appellant wrote to respondent, informing it that the note could not be paid before it was due, and stating further, "I have written to both Mr. Paulson and Mr. Oseran."

C. R. Paulson, respondent's witness, who, according to testimony introduced on behalf of appellant, was actively associated with Mr. Oseran (the man who sold

Mrs. DeLano the mining stock) in the sale of Primus Placer Gold Mining Company stock, testified in part as follows:

"Q. How did it (the note) come into your possession? A. I took it as part payment on an obligation note to me by M. W. Oseran. Q. That is the man that is payee of the note? A. Yes. . . . Q. What did you do with reference to actually negotiating the note? A. I took the note to the Spokane Securities Finance Corporation and sold it to them. . . . Q. You got this note from him? A. I got the note from Mr. Oseran. Q. Yes. Now, after you purchased the note, did you receive a letter from Mrs. DeLano? A. Yes. . . . Q. Did you show that letter to Mr. Mohr? A. No. . . . Q. And when you negotiated the note with the Spokane Securities Finance Corporation and were paid the $270, you did not know of the existence of that letter? A. No."

The letter above referred to was written by appellant to Mr. Paulson January 2, 1931. In the letter she said:

"Mr. Oseran assured me I would make $1,000 by the 10th of Jan. and held out wonderful prospects that before March 1st I would have nothing to pay but would be several thousand dollars ahead of the game. . . . Will you have the note returned if I will return the stock certificate which I do not want and cannot pay—please."

January 7, 1931, five days after appellant had written the foregoing letter to Mr. Paulson, and more than ten days after respondent had written appellant stating it had bought her note, Mr. Oseran wrote her a letter saying that he was still holding the note in question. Mrs. DeLano testified that her reason for writing to Paulson and Oseran was, "My business was through Mr. Oseran and he still had the note."

While the evidence above set forth was material for proving issues tendered by the pleadings, it did not

show any conduct or action on the part of appellant which would estop her from showing that respondent did not acquire the promissory note in good faith and without notice of any infirmity or defect.

Respondent insists that appellant failed to properly tender into court the stock for which the note was given. The second amended answer contains the following allegation:

"Defendant further alleges that she insisted upon returning said stock to plaintiff before this suit was commenced in return for her promissory note and that she was informed by plaintiff that said stock would not be accepted and that the plaintiff would consider nothing except the payment of the amount of money called for by the terms of the note."

Appellant introduced proof to sustain the foregoing allegation. In *Ward v. Thorndyke*, 65 Wash. 11, 117 Pac. 593, the court said:

"No formal tender of the note was necessary, since Ward's testimony shows that any such tender would have been idle."

The trial court erred in not submitting the case to the jury.

Reversed.

MILLARD, MAIN, BEALS, and MITCHELL, JJ., concur.