[No. 24854. Department One. April 9, 1934.]

MYRTLE EVELYN IRENE WILLIAMS, *Appellant*, v.
COWLITZ COUNTY *et al.*, *Respondents*.[1]

*William J. Conniff* and *Atwell & Moore*, for appellant.

*Ellis & Evans, Henry S. Gray*, and *Edgar P. Reid*, for respondents.

BEALS, C. J.—The Lewis river road in Cowlitz county runs easterly from the Pacific highway, which it intersects near Woodland, following along the north bank of the Lewis river. It constitutes the main thoroughfare leading to the site of the Ariel dam, where there has been very extensive construction work during the past few years.

[1]Reported in 31 P. (2d) 84.

During the year 1929, the defendants Inland Power & Light Company and Phoenix Utility Company (hereinafter referred to as the companies) commenced the construction of the Ariel power dam at an appropriate site on the upper reaches of the Lewis river. The Lewis river road being in several respects inadequate to carry the heavy traffic to which it would be subjected because of the extensive work to be done in building the dam, the companies entered into a written contract with defendant Cowlitz county whereby the companies were authorized to reconstruct the road and the bridges thereon to render the same suitable to their necessities. The contract purported to place the road under the companies' supervision and control for a period of two years from November 13, 1929.

At a point on the road in question about 2.7 miles east of the Pacific highway, the road crossed a bridge about seventy feet long and twelve feet wide, the bridge railing standing about three feet high on each side. Immediately east of the bridge, the road was paved with cement to the width of about ten feet, a four-foot dirt shoulder adjoining the cement on each side.

Under the contract hereinabove referred to, the companies, during the year 1930, improved the road by building a new bridge one hundred thirty feet long by seventeen feet wide, carrying a three-foot railing on each side approximately paralleling the old bridge on the south. Towards the east, the north rail of the new bridge extends about ten feet east of the end of the southerly rail of the old bridge, and terminates in a post eight inches square, standing about three feet above the surface of the roadway at a point

about a foot and a half north of the center of the traveled portion thereof.

At the time of the construction of the new bridge, the companies widened the highway sufficiently to embrace the space between the outer railings of the two bridges, making the road approximately thirty feet in width, each bridge still existing as a separate entity, the new bridge not being exactly parallel to the old bridge. To the west of the bridges the road follows an S curve, while to the east the road is straight for approximately seven hundred feet, rising about three feet in somewhat less than this distance. The paved portion of the road east of the bridge was largely covered with gravel, and had the same appearance as the unpaved portion of the highway. Neither the bridge railings nor the post above referred to had been painted, the wood presenting the usual weather-beaten appearance.

At about eight o'clock on the evening of February 14, 1931, plaintiff, Myrtle Williams, was driving her automobile in a westerly direction along the highway, two of her lady friends being passengers in her car. Plaintiff testified that she was unfamiliar with the road, which had many bends, and that, because of all the circumstances, she was keeping a very careful lookout. It had been raining during the day, and the night was dark. Plaintiff testified that her car had good head lights, that her windshield swipe was working, and that her four-wheel brakes were in good condition.

As plaintiff approached the bridge head at the rate of about twenty miles an hour, she was aware from the flashing of lights on bushes at the side of the road that a car was approaching. She first saw the lights reflected on her left hand side of the roadway. The reflection then passed from the left to the right, and

plaintiff saw the bridge railing on her right hand, the lights flashing across plaintiff's windshield. Plaintiff testified:

"I started to pull to the right of the road to give the other car more room to pass. There was,—the lights were just a second on the rail and passed across on my windshield. As they passed by me I saw the post in the middle of the road and reached for my brake and pulled it, but it was too late and I hit."

Plaintiff's car collided with the railing post in the middle of the road above referred to, and as the result of the collision, plaintiff suffered injuries on account of which she instituted this action, contending that the defendant companies and the county had created a dangerous situation in the road and suffered it so to remain, with the result that plaintiff suffered the damage for which she sought compensation in this action.

At the close of plaintiff's case, defendants moved for a judgment of nonsuit upon the ground, among others stated, that it appeared from the testimony introduced by plaintiff that she was guilty of contributory negligence, as a matter of law. The trial court sustained this motion, took the case from the jury, and after overruling plaintiff's motion for a new trial, dismissed plaintiff's action with prejudice. From this judgment of dismissal, plaintiff appeals.

Appellant's assignments of error may all be discussed in connection with the single proposition that the trial court erred in holding that appellant had been guilty of contributory negligence as a matter of law, thereby precluding any recovery in her favor in this action.

It is, of course, true, as stated by this court in the case of *Romano v. Short Line Stage Co.*, 142 Wash. 419, 253 Pac. 657, that

"A challenge to the sufficiency of the evidence or a motion for non-suit admits the truth of the plaintiff's evidence, and all inferences that can reasonably be drawn therefrom, and the evidence must be interpreted most strongly against the defendant."

In the case of *Teshirogi v. Belanger,* 167 Wash. 278, 9 P. (2d) 66, the *Romano* case was cited with approval, this court explaining the principle governing such questions in the following language:

" 'The rule, however, which this court has uniformly adopted is that an action for personal injuries should not be taken from the jury on the ground of plaintiff's contributory negligence, unless the same so clearly appears that reasonable minds cannot differ as to the usual and probable results of the acts proved.' "

The cases of *Thoresen v. St. Paul & Tacoma Lumber Co.,* 73 Wash. 99, 131 Pac. 645, 132 Pac. 860; *Spokane Security Finance Co. v. DeLano,* 168 Wash. 546, 12 P. (2d) 924; and *Carroll v. Western Union Telegraph Co.,* 170 Wash. 600, 17 P. (2d) 49, are to the same effect.

Appellant, a driver of many years' experience, testified that she was driving in the middle of the road, that the head lights of her car had recently been tested, were in perfect condition, and lighted the entire width of the road. She stated that she could at any time stop her car within the radius of her lights. Her approach to the bridge was along a road straight for over seven hundred feet. Appellant did not see the bridge until the railing on her right hand side was illuminated by the head lights of the approaching car.

Appellant vigorously contends that respondents were negligent in setting and maintaining the post in the roadway and in failing to place a light or some

other warning to call the attention of approaching drivers to the situation. Appellant testified that, as she started to pull over to her right hand side of the road to give the approaching car more room to pass, she saw the post for the first time. In answer to the question on cross-examination, she stated, "I hit it as soon as I saw it, so I must have been pretty close." The following portion of the cross-examination of appellant is pertinent to this inquiry:

"Q. If you had occasion to stop any place along the road, your lights would have given you ample light so you could have stopped in the radius of your lights? A. Yes. Q. Up to the time you got to the bridge, if anything had showed up within the range of your lights could you have stopped going at the speed you were traveling, could you? A. Yes. Q. There never was a time on the whole trip you could not have done that, was there? A. I do not remember that there was. Q. What is your best judgment? Your lights were working perfectly, weren't they? A. Yes. Q. As you came down until this bridge came on the scene, you had time if anything showed up in the range of your lights, and you could have stopped that car, could you? A. Yes."

Taking appellant's description of the situation, the condition of her car as to brakes and head lights, and the speed at which she was traveling, it is well nigh impossible to understand how appellant could have failed to see the bridge and comprehend the situation in connection therewith in time to have avoided striking the post, had she been maintaining that careful lookout which the driver of an automobile must maintain in order to avoid danger. Road and weather conditions were no worse than must reasonably be anticipated, and it clearly appears from appellant's testimony that she was fully aware that all existing conditions united in requiring careful driving.

Appellant cites several decisions by this court as supporting her contention that the trial court erred in ruling that she was guilty of contributory negligence, as a matter of law.

In the case of *Morehouse v. Everett,* 141 Wash. 399, 252 Pac. 157, 58 A. L. R. 1482, this court held that failure to drive within the radius of one's lights did not constitute negligence as a matter of law. In the course of the opinion, this court said, referring to the case of *Lauson v. Fond du Lac,* 141 Wis. 57, 123 N. W. 629, 25 L. R. A. (N. S.) 40:

"If this opinion means that one driving an automobile at night must, under all circumstances, see any object in the road in front of him which comes within the radius of his lights, and be able, under all circumstances, to stop his car before striking the object, then we are unable to agree with it. On the contrary, if it holds that he must see any object which an ordinarily prudent driver under like circumstances would have seen, then we think it states the law correctly."

In the *Morehouse* case, a doctor was awakened at four o'clock in the morning to answer an emergency call. There was considerable fog and the visibility was poor. The doctor ran into a house which was being moved along a street. It was held that it could not be said, as a matter of law,

" . . . that the deceased was bound to see the building with the aid of his front lights and stop before striking it, and it was for the jury to determine whether, under the same or similar circumstances, a reasonably prudent man, driving in a reasonably careful manner, would have seen the building in time to have stopped, even though there were no red lights on it to give warning."

In the case of *Layton v. Yakima,* 170 Wash. 332, 16 P. (2d) 449, this court affirmed judgments entered

upon verdicts in favor of the plaintiffs in consolidated actions brought to recover for personal injuries suffered by the driver of an automobile and another riding with him when the car struck a boom projecting from a truck which was being used in carrying gravel. The accident occurred in the city of Yakima, the defendant city contending on appeal that the driver of the car had been guilty of contributory negligence. After careful consideration of the evidence, this court held that the questions presented were for the jury.

Appellant also relies upon the cases of *Griffith v. Thompson*, 148 Wash. 243, 268 Pac. 607; *Gilbert v. Solberg*, 157 Wash. 490, 289 Pac. 1003; and *Helf v. Hansen & Keller Truck Co.*, 167 Wash. 206, 9 P. (2d) 110.

In the case of *Graves v. Mickel*, 176 Wash. 329, 29 P. (2d) 405, this court held the driver of an automobile guilty of contributory negligence, as a matter of law, he having sued to recover for injuries suffered when his car struck a truck which had become stalled on the highway. This court called attention to the fact that at least half of the paved portion of the highway was free from traffic, and that plaintiff's car was equipped with proper lights and efficient brakes. In concluding that the plaintiff was guilty of contributory negligence, this court said:

"If Jones had been operating his car, equipped as it was with good lights and proper brakes, with ordinary care for his own safety, he would have seen the truck in time to avoid accident. We cannot escape the conclusion that respondent Jones was guilty of such contributory negligence, as a matter of law, as should bar a recovery in his case."

Examination of the record in this case and of the authorities cited by the respective parties leads us to

226

the conclusion that the trial court did not err in granting respondents' motion for a nonsuit and in dismissing the action.

The judgment appealed from is affirmed.

MILLARD, MAIN, MITCHELL, and STEINERT, JJ., concur.

ON REHEARING.

[*En Banc.* October 9, 1934.]

PER CURIAM.—Upon a rehearing *En Banc,* a majority of the court adheres to the opinion heretofore filed herein.