[No. 28629.    Department Two.    March 6, 1942.]

H. H. HIGGINS *et al.*, *Appellants*, v. FRED RADACH, *Respondent*.[1]

[1]Reported in 123 P. (2d) 352.

*Clinton & Southard,* for appellants.

*James F. Wickwire,* for respondent.

BEALS, J.—In their complaint, plaintiffs alleged that, on or about August 27, 1932, defendant, Fred Radach, executed and delivered his negotiable promissory note, whereby he promised to pay, March 1, 1933, for value received, to the order of Fred Schwab Commission Company of Washington (hereinafter referred to as the Commission Co.), one hundred ninety dollars, with interest at the rate of eight per cent per annum; that the payee, for a valuable consideration, transferred the note to First National Bank of Ephrata, a corporation; that the bank became insolvent, and, on or about June 13, 1936, the receiver of the bank, acting under order of the United States district court, sold the note to the plaintiffs in this action. Plaintiffs demanded judgment for the amount due on the note, some twenty-nine dollars having been credited thereon, together with interest, costs, and attorney's fees.

Defendant answered, admitting the execution of the note, denying the transfer of the note to the bank, admitting the insolvency of the bank, and denying any indebtedness on the note.

By way of an affirmative defense, defendant alleged that prior to the execution of the note he had delivered to the Commission Co., for storage, over six hundred bushels of wheat, and that defendant executed the note in favor of the Commission Co. as evidence of a transaction which defendant was fraudulently induced by the Commission Co. to believe was a loan as an advance upon defendant's wheat; that, at the time of the execution of the note, the Commission Co. fraudu-

lently represented to defendant that it still held defendant's wheat, and that the note which defendant was induced to execute on delivery to him of the sum of one hundred ninety dollars as an advance upon his wheat would be paid from the proceeds of the wheat when the same was sold by the Commission Co.; that in fact the Commission Co., prior to the execution of the note, had sold and converted all of defendant's wheat, without defendant's knowledge, and had become indebted to defendant in an amount in excess of the principal of the note; that defendant had no means of ascertaining the true facts, and had he known the facts would not have executed and delivered the note; that there was no valuable consideration moving to defendant for the execution of the note.

Defendant also alleged that the owner of the Commission Co. was the owner of the majority of the stock of the bank referred to, and operated the bank for his own benefit and for the benefit of the Commission Co.; that, at the time of the endorsement of the note by the Commission Co. to the bank, the bank had knowledge, through its officers, of the fact that the note had been delivered by defendant without consideration, and was based upon misrepresentation, and that the bank gave no valuable consideration for the note.

Plaintiffs having replied to defendant's affirmative answer with denials, the case was tried to a jury, which returned a verdict in favor of the defendant. Plaintiffs' motions for judgment notwithstanding the verdict, or in the alternative for a new trial, having been denied, judgment was entered upon the verdict, dismissing the action, from which judgment plaintiffs have appealed.

Error is assigned upon the giving of several instruc-

tions, and upon the overruling of appellants' motion for a directed verdict at the close of the testimony.

■ Instruction No. 1, of which appellants complain, simply advised the jury as to the issues disclosed by the pleadings. Appellants excepted to this instruction, but as the ground of their objection refers to the evidence concerning which the issues, as disclosed by the pleadings of the respective parties, had nothing to do, the exception taken does not relate to the instruction. The instruction fairly and correctly stated the issues, as disclosed by the pleadings, and we find no error therein.

Appellants complain of two other instructions given by the court, but examination of the instructions shows that the same correctly stated the law applicable to the facts of this case, and appellants' assignments of error are without merit.

By their second assignment of error, appellants present the proposition that the trial court erred in refusing to grant their motion for a directed verdict in their favor. The trial court did not err in denying this motion, if the record contained evidence which would support a verdict in respondent's favor.

From the evidence introduced, the jury were warranted in finding as follows: That in August, 1932, respondent delivered over six hundred bushels of wheat to Fred Schwab Commission Company of Washington, for storage, receiving no warehouse receipts therefor; that respondent later, by telephone, requested the manager of the Commission Co. for an advance on his wheat; that the request was agreed to, and the Commission Co.'s check for one hundred ninety dollars, upon which was written "advance on wheat," payable to respondent, was delivered to him, and cashed; that with the check was sent to respondent a promissory note in the same amount as the check,

payable to the Commission Co., and that respondent signed the note and returned it to the company; that, soon after the receipt of respondent's wheat, the Commission Co. shipped the same to Seattle and sold it, becoming then indebted to respondent in a sum in excess of the face of the note, for the conversion of his wheat; and that the Commission Co. was so indebted to respondent at the time of the delivery to respondent of the check above referred to, and the delivery of the note sued upon by respondent to the Commission Co. The jury, then, were warranted in believing that, at the time the Commission Co. procured from respondent the note in suit, the Commission Co. was indebted to respondent for conversion of his wheat, in a sum in excess of the amount of the note, and that the note was procured from respondent by fraud practiced upon him by the Commission Co., the payee named in the note.

█ It is, of course, the general rule that fraud is not a defense as against the holder of negotiable paper, who took the same in due course without notice.

█ · Rem. Rev. Stat., § 3450 [P. C. § 4130], reads as follows:

"[Every] holder is deemed prima facie to be a holder in due course; but when it is shown that the title of any person who has negotiated the instrument was defective, the burden is on the holder to prove that he or some person under whom he claims acquired the title as holder in due course. But the last-mentioned rule does not apply in favor of a party who became bound on the instrument prior to the acquisition of such defective title."

The last sentence of the section quoted refers to a situation in which the party sought to be held liable was originally actually liable on the instrument sued upon. Such a situation is shown by the opinions in

the cases of *Ladd & Tilton Bank v. Small*, 126 Wash. 8, 216 Pac. 862, and *Balch v. English*, 261 Ill. App. 29.

In the case of *Marsol Credit Co. v. West Coast Grocery Co.*, 191 Wash. 134, 70 P. (2d) 1046, in an action upon trade acceptances, which was tried to the court without a jury, this court reversed a judgment in favor of the holder of the acceptances and against the maker. In the course of the opinion, the court said:

"The only question presented by this appeal, in view of the finding that the contract between the Duralith Corporation and the appellant was procured by fraud, is whether the respondent was a *bona fide* holder for value of the trade acceptance in question.

"Proof by the plaintiff that he is the holder of a negotiable instrument raises a presumption that such plaintiff is a *bona fide* holder. When, however, the defendant proves fraud between the original parties to the instrument, the burden is on the plaintiff to prove that he is a *bona fide* holder.

" '[Every] holder is deemed prima facie to be a holder in due course; but when it is shown that the title of any person who has negotiated the instrument was defective, the burden is on the holder to prove that he or some person under whom he claims acquired the title as holder in due course. . . . ' Rem. Rev. Stat., § 3450 [P. C. § 4130].

"Under the uniform negotiable instruments act, the title of a person acquiring an instrument by fraud is defective.

" 'The title of a person who negotiates an instrument is defective within the meaning of this act when he obtains the instrument, or any signature thereto, by fraud, duress, or force and fear, or other unlawful means, or for an illegal consideration, or when he negotiates it in breach of faith, or under such circumstances as amount to a fraud.' Rem. Rev. Stat., § 3446 [P. C. § 4126].

"We have consistently held that proof of fraud between the original parties imposes upon the plaintiff the onus of proving good faith. *Keene v. Behan*, 40

Wash. 505, 82 Pac. 884; *Gottstein v. Simmons*, 59 Wash.
178, 109 Pac. 596; *Citizens Savings Bank v. Houtchens*,
64 Wash. 275, 116 Pac. 866; *Spokane Security Finance
Co. v. DeLano*, 168 Wash. 546, 12 P. (2d) 924.

"In the opinion of the last case cited, we said:

" 'After the introduction of testimony by appellant
[defendant] to the effect that the payee of the note
obtained it by fraud, respondent corporation could no
longer rest upon the ordinary presumption that the
transferee of a promissory note has acquired it in good
faith, without notice of any infirmity or defect, but
was required to show affirmatively its good faith.' "

The case of *Ireland v. Scharpenberg*, 54 Wash. 558,
103 Pac. 801, is in point, and the following texts should
also be read in this connection: 11 C. J. S. 53, § 654,
c. Defect in Title (1); 18 A. L. R. 25 b., 53-5; 57 A. L. R.
1084 b.; 72 A. L. R. 62.

Under the decisions above cited, if the jury
believed that the note sued upon was obtained by the
original payee from respondent by fraudulent means,
before they could find in favor of appellants it would
be necessary that the record contain evidence affirma-
tively showing that the endorsee bank acquired the
note, not only before maturity, but for value and in
good faith, without notice of any infirmity in the
payee's title, and that the note was fair and regular
on its face. The burden rested upon appellants to
show this, unless, of course, they desired to take their
stand upon the proposition that the evidence failed
to show that the note was originally procured from
respondent by fraudulent means. The record contains
no evidence whatever bearing upon the status of the
bank as being, or not being, a holder in due course.
Under these circumstances, the verdict of the jury in
favor of respondent, that verdict being supported by
evidence sufficient to warrant a finding that the note

was originally procured by fraud, supports the judgment entered in respondent's favor.

Attention should be called to the fact that appellants purchased respondent's note several years after its maturity date, and by their purchase of the instrument, succeeded to the rights of the bank, neither more nor less.

Appellants strenuously argue that the recent decision of this court in the case of *Higgins v. Daniel,* 5 Wn. (2d) 134, 105 P. (2d) 24, calls for reversal of the judgment appealed from. Appellants here were respondents in the case cited, the defendant therein having executed a note in favor of the First National Bank of Ephrata, the endorsee of the note here in question. The note was dated September 12, 1932, and it appeared that, sometime prior thereto, the defendant had deposited with the owner of a wheat warehouse, who was also president of the bank, a member of its board of trustees, and owner of a majority of its stock, a quantity of wheat of greater value than the amount due on the note, for which the maker of the note received warehouse receipts, which were pledged to the bank as security for the payment of the note. After the appointment of a receiver for the bank, it was discovered that the warehouseman-bank president had converted to his own use most of the wheat, and that the warehouse receipts held by the bank were practically worthless. In the suit on the note, the defendant maker sought to make the bank liable for its president's conversion of the wheat. The action was tried to the court, which rendered judgment in favor of the owners of the note and against the maker. On appeal, this court affirmed the judgment, holding that from the record it appeared that the maker of the note had not, by a preponderance of the evidence, proved the allegations set forth by way of an affirma-

tive defense in his answer, in which he set forth allegations which he contended, if proven, would render the bank liable for the conversion by its president of the wheat deposited with him, in the course of his business as warehouseman.

The maker of the note did not contend that he was not originally liable thereon, or that the note had been procured by fraud. His contention was that, by facts occurring subsequently to the making of the valid note, to wit, the conversion of his wheat, he had been relieved of liability to the bank, and was not liable to the bank's successor in interest. The question is entirely different from that here presented, and a different statutory presumption applies. The case is not here in point.

The trial court properly denied appellants' motion for judgment in their favor at the close of all the evidence, and the record being free from error, the judgment thereafter entered upon the verdict of the jury was correct, and the same is affirmed.

ROBINSON, C. J., BLAKE, SIMPSON, and JEFFERS, JJ., concur.