[No. 25401. *En Banc.* November 13, 1935.]

FRANK E. MEYER *et al., Respondents,* v. MARIENNE E. MILLER, *Appellant.*[1]

*Griswold, Hamilton & Johnson,* for appellant.

*W. F. Fisher,* for respondents.

GERAGHTY, J.—This action grows out of an automobile collision occurring on High street, in Bellingham, resulting in property damage to an automobile and personal injuries to the plaintiff Helen J. Meyer. The case was tried to the court without a jury, and from a judgment in favor of plaintiffs, the defendant appeals.

Appellant occupied an apartment in the Lamont apartment house at the southwest corner of the intersection of High and Myrtle streets. High street, as platted, is eighty feet wide, but the paved way is only

[1]Reported in 50 P. (2d) 1018.

twenty-four feet between curbs. From Myrtle street south for about two hundred feet, the grade of High street is a little over three per cent. The grade then increases to eleven and one-half per cent at a crest about four hundred feet south of Myrtle street.

The apartment house is about one hundred feet long, faces High street, and stands twenty-eight feet inside the curb. The several apartments have separate entrances from the street. The entrance to appellant's apartment is about one hundred and twenty-five feet south of the center line of Myrtle street.

At the time of the collision, 7:30 p. m., December 11, 1933, the appellant's unlighted car was standing at the curb on High street, slightly south of the entrance to her apartment, where she had parked it earlier in the evening.

The night was dark and it had been raining, but the rain had lessened to what the witnesses speak of as a drizzle or mist at the time of the accident. The intersection of High and Myrtle streets was lighted by a one-hundred-candle lamp suspended twenty feet above the pavement. There was also a light in the ceiling of the porch at the entrance to appellant's apartment.

The respondent Frank E. Meyer had driven, with his wife, in a Ford car to the residence of Mrs. McElmon, who, upon his invitation, entered the car and accompanied the Meyers to the American Legion Hall. There, Mr. Meyer turned the car over to Mrs. McElmon, requesting her to call for a Mrs. Dwelle, living on High street, and take her, with Mrs. Meyer, to a church which the three ladies had planned to attend.

Driving south on High street, Mrs. McElmon had just crossed Myrtle street when she observed an unlighted car parked at the curb just south of the intersection and in front of the entrance to the apartment nearest Myrtle street. She made a quick turn to the

left to avoid colliding with this car, passing to the left side of High street. As she passed this car, she saw the lights of an oncoming car from the south about three hundred feet ahead. Turning to the right, as she testified, to avoid the oncoming car and get upon her own side of the street, she collided with the rear of appellant's car. At the moment of the impact, the north-bound car passed her. The position of appellant's car was about eighty feet south of the first parked car.

As a result of the collision, the respondent's car was damaged and Mrs. Meyer suffered painful, but not serious or permanent, injuries.

The position of the cars after the collision would indicate that the left rear of appellant's car was struck obliquely by the bumper of respondent's car, and that respondents' car was facing southwesterly, or toward the right-hand curb, at an angle of about forty-five degrees.

The respondent Meyer and his two brothers composed the Western Woodworking Company, which owned the car but permitted respondents to use it for their personal and family needs. The claim of the woodworking company for damage to the car was assigned to respondents, who sued as assignees.

The appellant, in effect conceding her own negligence in leaving her unlighted car parked in the street, urges, as the one substantial question raised by her appeal, that Mrs. McElmon, the driver of respondents' car, was negligent in a manner proximately contributing to the accident, and that her negligence is to be imputed to the respondents, since she was driving the car at their request. In support of the claim of contributory negligence, the appellant relies chiefly upon the testimony of the driver, Mrs. McElmon, the pertinent portions of which are as follows:

"We came along to the intersection of Myrtle street. I was travelling very slowly. I could have stopped the car there for the intersection of Myrtle street had it been necessary. I proceeded across Myrtle street and came unexpectedly upon a parked car. I could have sworn upon a stack of bibles that my side of the street was entirely clear. It was not visible whatsoever, and I came through the intersection there and came unexpectedly upon a parked car which I successfully passed. I got out into the middle of the street and there was a car coming from up the hill somewhere. It was a very shiny kind of misty night. The windshield swipe was going. It was not a heavy downpour, and I had swerved out to miss that car and proceeded up the street and started to go on up my own side to give this car coming down a perfect clearance, and unexpectedly bumped into a car which I had no time to see; it was simply there, and the car that came down the street passed me just almost as I hit this car. There was just a bat of an eye between the time that I hit that car and the car coming down the street passed me. Q. Did the lights of the car coming down the hill have any effect upon your visibility at all? A. Not whatever. I felt I had absolute perfect vision as far as that is concerned. They didn't interfere with my vision at all. Q. Was there any lights that you saw on the car which you ran into? A. No, sir; none whatever."

With relation to the first parked car, Mrs. McElmon testified:

"By the Court: I wonder how close you were to this first car? A. I was close. It was dark and I came upon it unexpectedly. I passed it. I had no time to visualize the space at all, but I just saw the glimmer of the reflection of my headlight on the rear bumper. Q. And then you swung away? A. Well, I imagine I did as far as I could to miss that car. . . . Q. Tell the court whether or not there was any glare from the approaching car that came down the hill. . . . A. There was no glare from that car, except at the top of the hill the pavement was shiny up there, but I had absolutely no feeling whatsoever at any time that I

had not perfect visibility. Q. What do you mean by perfect visibility? A. If there had been any object there that had had any light on it, or was visible at all, I could have seen it."

Both the respondent Meyer and Mrs. McElmon testified that the car was in good condition, with efficient brakes and lights. Mrs. McElmon said the lights were burning and the windshield swipe was operating. She had driven cars of different makes for several years.

Taking Mrs. McElmon's own testimony, we cannot avoid the conclusion that she did not drive as an ordinarily prudent person would under the circumstances. To begin with, she testified that she did not see the first parked car until she came upon it as she crossed the Myrtle street intersection, although the car was but a short distance south of the intersection and within the range of the street light. To avoid striking this car, she turned sharply to the left and saw the lights of the oncoming car from the south, some three hundred feet away. The distance between the first parked car and the second being eighty feet, if her car had been under proper control and if she had been observant, she would have had time to drive to the right early enough for her lights to have disclosed the appellant's car. As a matter of fact, she testified that she was on the right side of the street and struck appellant's unlighted car just as the car from the south passed. But this testimony cannot be reconciled with the position of her car after the accident. As we have seen, when her car came to rest it was facing southwesterly toward the right-hand curb at an angle of forty-five degrees. It struck the right rear of appellant's car at this angle, pushing the car against the curb.

While the street was only twenty-four feet in width between curbs, there was room for her car to pass the

oncoming car without striking appellant's car. As far as the record discloses, the oncoming car was driving safely upon its own side of the street. While it may not be said that her failure to observe the first parked car, under conditions where she should have seen it if she had looked, contributed proximately to the collision, it does characterize her manner of driving at the time. The car she was driving was in good order, with perfect brakes and lights, and the windshield swipe was working. There was nothing to prevent her seeing what was immediately ahead of her, in time to avoid a collision, if she had been observant.

Apart from this, she knew that High was a much-traveled residential street, and she must have known, from her experience as a driver on city streets, that, notwithstanding the liability the law imposes upon the parking of unlighted cars, people do so park their cars on residential streets.

The testimony shows that appellant's car was parked at the curb. This left ample room for Mrs. McElmon to pass the oncoming car if she had been driving in accordance with the measure of care the law imposed upon her.

While we held in *Morehouse v. Everett*, 141 Wash. 399, 252 Pac. 157, 58 A. L. R. 1482, that failure to drive within the radius of one's lights does not of itself constitute negligence, as a matter of law, we also held that a driver must see any object which an ordinarily prudent driver, under like circumstances, would see. If she had been driving as a reasonably prudent person, Mrs. McElmon could have passed the appellant's car in safety, notwithstanding the approach of the oncoming car from the south, or, if she had chosen to do so, she could have returned to her own side of the street in time, with the aid of her lights, to have seen appellant's car and avoided the collision.

■ This brings us to the question whether the negligence of Mrs. McElmon is to be imputed to the respondents. As we have seen, while the car driven by Mrs. McElmon was owned by Western Woodworking Company, that company permitted the respondents to use it for personal and family purposes. Mrs. McElmon testified that she started driving the car from the American Legion Hall at the request of Mr. Meyer. Mr. Meyer himself testified that he requested Mrs. McElmon to drive the car, and that, earlier in the evening, Mrs. Dwelle had called him up and asked him to stop for her. It is, therefore, apparent that Mrs. McElmon was driving the car as the agent of the respondents, and that they are chargeable with her negligence.

The judgment will be reversed, and the cause remanded to the trial court with instructions to dismiss.

MILLARD, C. J., BEALS, MAIN, and MITCHELL, JJ., concur.

TOLMAN, J. (dissenting)—As I understand the evidence disclosed by the record, it does not preponderate against the trial court's finding against contributory negligence.

In the light of our well-settled rule to the effect that the evidence must preponderate against a finding by the trial court before we can disturb it, this judgment should be affirmed.

HOLCOMB and BLAKE, JJ., concur with TOLMAN, J.

STEINERT, J. (dissenting)—I dissent, for the reason that I think that this court cannot, and should not, substitute its judgment for that of the trial court upon a question of fact, particularly so when, as in the majority opinion, inferences are indulged which do not inexorably flow from the established facts.

According to the majority opinion, the night in ques-

tion was dark; it had been raining, and there was still a drizzle or mist at the time of the accident, so much so that it required the operation of respondent's windshield swipe. The evidence of contributory negligence upon which the majority's ''conclusion'' rests consists of two elements: (1) that respondent's driver did not see the first parked car ''until she came upon it after she crossed the Myrtle street intersection,'' and (2), her lack of observation and control of her car as she passed appellant's car, which was the second parked car and with which she collided.

As to the first point, it will be remembered that the first parked car stood 125 feet south of the intersection. It was unlighted. Inasmuch as the street light in the intersection was *between* respondent's driver and the first parked car, at least until she reached the intersection, it could not be said categorically that she saw, or was in a position to see, that car until she had crossed the intersection. She did see it, however, as she was passing *out* of the intersection, in time to avoid it by swerving sharply to her left. Up to that time, there was no contributory negligence on her part as a matter of law, and the judgment of the trial court indicates that there was none, as a matter of fact. But for the appellant's car, there would have been no collision.

On the second point, there is no evidence of lack of control or of observance on the part of respondent's driver. The statement to the contrary in the majority opinion is merely an inference drawn from the fact of collision. But if that kind of inference is to be drawn in this case, then there would rarely ever be a right to recover for a collision with a stationary object.

The width of the street between curbs was only twenty-four feet, or twelve feet on either side of its center line. Appellant had no right to leave her car

parked at the curb without having a rear light thereon. Since there was no such light, respondent's driver had the right to assume that the right side of the road ahead of her was clear, and she had the right to act upon that assumption until and unless, by the exercise of reasonable care, she could have discovered a contrary condition. She pulled over to her right, as she should have done, to permit a car coming from the opposite direction to pass her, as it had the right to do. Suddenly, appellant's car, a black object, loomed before her, at a time when a collision was inevitable.

The majority say that if she had been observant, "she would have had time to drive to the right early enough for her lights to have disclosed the appellant's car." But that conclusion does not necessarily follow. She *did* observe the lighted car coming from the opposite direction and did what she was required to do; she pulled over to the right. She *did not* observe the unlighted car parked at the curb until it came within the arc of her own lights. Her failure to observe the unlighted car sooner was not contributory negligence as a matter of law, and the fact was determined otherwise by the trial court.

The position of the cars *after* the accident does not, of itself, establish contributory negligence on the part of respondent's driver. Had her car been turned completely around, it would not have proven that she had come from an opposite direction, traveling on the wrong side of the street.

The circumstances and conditions then existing made it peculiarly a case for the trier of the fact, who saw the witnesses, heard the evidence, and probably knew something about the actual physical conditions. It is impossible, in my opinion, for this court to decide the issue as a matter of law; and to determine it as a matter of fact merely from inferences and conclusions,

402

violates the established rule relative to the province of an appellate court.

In my opinion, the judgment should be affirmed.