[No. 27873. *En Banc.* April 24, 1941.]

EUGENE V. CRONIN, *Respondent*, v. SHELL OIL COMPANY, *Appellant.*[1]

'Reported in 112 P. (2d) 824.

*Caldwell, Lycette & Diamond,* for appellant.

*J. L. Rucker,* for respondent.

BEALS, J.—At about nine o'clock in the forenoon, December 10, 1937, Robert Smith, an employee of defendant, Shell Oil Company, was driving a gasoline truck belonging to defendant, in an easterly direction on the road which crosses Ebey slough on a mile and a quarter trestle, a short distance east of Everett. The trestle is straight and level, paved with concrete to the width of twenty-four feet, having a rough surface affording good traction, and is not intersected by any other road. The one and a half ton truck was carrying six hundred gallons of gasoline and some lubricating oil, weighing, with its load, approximately nine tons. The body was painted a brilliant yellow, the hood and fenders red.

Plaintiff, Eugene V. Cronin, left Everett for Monroe, at about a quarter before nine, in his Dodge automo-

bile. For some distance he followed a truck, which he passed near the curve leading to the west end of the trestle. He then saw the oil truck ahead of him on the trestle, at a distance of about thirteen hundred feet. It had rained earlier in the morning, but at the time referred to was not raining, although the pavement was damp. Visibility was excellent. After entering the trestle road, plaintiff raised his speed to something over forty miles per hour, gradually overtaking the oil truck, which plaintiff estimated was traveling at about thirty-five miles per hour.

As plaintiff approached the oil truck, he noticed another truck approaching from the east. When this latter truck, referred to as a "pick-up" truck, which was proceeding very slowly, probably at about one mile per hour, was about even with the oil truck, plaintiff was from two hundred to two hundred fifty feet behind the latter vehicle. The west bound truck, driven by L. H. Warfield, was towing a gas pump, the driver of the truck, in order to watch his tow, standing with one foot on the running board and one near the accelerator, his body partly in and partly out of the truck.

After passing the west bound truck, the oil truck slowed down and, according to the testimony of plaintiff, stopped. Meanwhile, another truck was approaching from the east, and for that reason plaintiff was unable to pass the oil truck. The situation resulted in a collision between plaintiff's automobile and the oil truck, plaintiff's car striking the rear of the truck with considerable force. The collision occurred about four hundred forty feet west of the east end of the trestle.

Plaintiff sued defendant for damages on account of personal injuries received by plaintiff in the collision, and for five hundred dollars damage to plaintiff's auto-

mobile. In his complaint, plaintiff alleged that defendant's driver negligently stopped his truck upon that portion of the highway reserved for east bound traffic, at a point where it was impossible for plaintiff to pass the truck because of west bound traffic; that defendant's driver was negligent in stopping his truck in the absence of any emergency requiring such action; and that he failed to give any signal of his intention to stop the truck, and failed to maintain proper observation of other persons using the highway, including plaintiff.

Defendant in its answer denied all negligence on the part of its driver, and pleaded contributory negligence on the part of plaintiff. Plaintiff by his reply denied all negligence on his part, and the action was tried to a jury, which returned a verdict in plaintiff's favor, in the sum of four thousand dollars. From a judgment entered upon this verdict, defendant has appealed.

Appellant assigns error upon the denial of its motion for a nonsuit and a directed verdict at the close of respondent's case; upon the denial of its motions for a directed verdict at the close of all the evidence; upon the refusal of the trial court to give certain instructions requested by appellant; and upon the giving of four instructions to which appellant excepted. Error is also assigned upon the denial of appellant's motion for judgment in his favor notwithstanding the verdict, or in the alternative for a new trial. We shall consider only the assignment of error based upon the denial of appellant's motion for judgment in its favor notwithstanding the verdict.

There is little dispute concerning the relevant facts. The verdict of the jury settled in favor of respondent the question of the negligence of appellant's driver. The only question upon the facts of the case to be here decided is whether or not, upon the record,

it should be held as matter of law that respondent was guilty of contributory negligence. In considering that question, we must take that view of the evidence most favorable to the party against whom the motion is made, the question involving no element of judicial discretion. With the principles applicable to such a question in mind, we shall consider the evidence in the case.

Respondent had a complete and unobstructed view of the brilliantly painted truck, for a considerable distance, as both cars moved eastward along the trestle. Respondent gained steadily upon the oil truck, until within from two hundred to two hundred fifty feet thereof. It was at this time that the pick-up truck, towing the gas pump, approaching from the east, passed the oil truck. The pick-up truck was traveling very slowly on its own side of the road, Warfield, its driver, watching the gas pump to be sure that it did not break loose. Just before passing the oil truck, Warfield waved a friendly greeting to Smith, with whom he was acquainted. This greeting attracted respondent's attention.

Respondent testified as follows concerning the matters which he said distracted his attention from the oil truck:

"Q. When you approached the scene of the collision, what did you see? A. Well, I was getting so I could see the pipe-line truck [the pick-up], and there was some object that I noticed that was behind it; it was sticking out over the side of a car there, and then I noticed this man waving. Q. You noticed him waving. Can you show the jury, or tell the jury, how that was being done? A. Well, as near as I can say, he was looking back and waving with this arm, and that's about the size of what I could relate on that . . . A. Well, I naturally watched this here pipe-line man that was doing all the waving; I was wondering who he was motioning to, and I glanced back at the

road, and here this Shell truck was apparently stopped in front of me."

On cross-examination:

"When I looked back on the highway I was about twenty-five or thirty feet ahead of this pipe-line truck. I was watching him until I was sure that there was nothing that he was waving to me for, and then I watched back on my side of the road."

Mr. Warfield testified that he had waved a greeting to Mr. Smith; that he had observed respondent's car approaching; and that respondent was watching the witness, and continued to observe the pick-up truck until Mr. Warfield passed respondent's car. The witness also testified that respondent's car was making forty or forty-five miles per hour.

The record contains no evidence indicating that any good reason existed for the concentration of respondent's attention upon the pick-up truck. It was on its own side of the road, proceeding very slowly. Undoubtedly it presented a rather unusual spectacle, but respondent's continued interest therein can be classified only as mere curiosity. Respondent testified, *supra,* that Warfield was "looking back and waving." If Warfield was looking back, manifestly he was not waving at respondent, or to attract his attention.

Appellant's oil truck commenced to slow down as it passed the pick-up truck. The testimony is in dispute upon the question of whether the truck had come to a complete stop at the moment of impact, or whether it was still proceeding at a speed less than fifteen miles per hour. Respondent was the only witness who testified positively that the truck had completely stopped prior to the collision, and his testimony in this connection is equivocal.

Robert Smith, the driver of appellant's truck, testified that he gave the appropriate arm signal of his

intention to stop. His testimony stands uncontradicted. Appellant's truck was equipped with a rear red brake light. Whether this light functioned as the oil truck slowed down does not appear. Respondent testified that he did not see Smith's arm signal indicating his intention to stop, but in view of his testimony that he was watching the pick-up truck, his failure to see the signal may readily be understood.

Respondent testified that he ceased to watch the oil truck when about two hundred or two hundred fifty feet behind it, and that, when he again looked at it, he was within seventy-five feet, and gaining on it very rapidly, as he had not reduced his speed below forty miles per hour. Concerning this matter, he testified:

On cross-examination: "Q. Then at that time under those circumstances, you looked at this truck [pick-up truck] over here, and you continued to look at that truck until you finally looked back on the highway here, and at that point you were about seventy-five feet behind the Shell truck, that is correct, is it not? A. About that far. . . . Q. After looking off the highway for some length of time, you were seventy-five feet behind the truck, then you looked back and saw the Shell truck ahead of you, and after seeing it you did not put your brakes on during the time you traveled from seventy-five feet down to about thirty or thirty-five feet again, is that right? A. About that, yes."

On direct examination: "Q. Tell what happened. A. Well, I naturally watched this here pipe-line man that was doing all the waving; I was wondering who he was motioning to, and I glanced back at the road, and here this Shell truck was apparently stopped in front of me. Well, my first thought was to go around him. I glanced up and here was this pulp-wood truck coming, so close that if I swung out I was going to take the pulp-wood truck on at the front there, and that would· be all my fault, and it would be dangerous for a head-on collision, so the best thing I could do was to try to stop and go into the back end of the Shell truck."

The pulp wood truck referred to by respondent was approaching along the trestle from the east, traveling slowly and on its proper side of the road. Testimony was introduced to the effect that respondent could have safely passed the oil truck on its left, but the evidence upon this question being in conflict, it must be assumed that respondent was not negligent in not attempting to pass appellant's truck.

Rem. Rev. Stat., Vol. 7A, § 6360-81 [P. C. § 2696-839], reads as follows:

"It shall be unlawful for the operator of any motor vehicle to follow another vehicle more closely than is reasonable and prudent, having due regard for the speed of such vehicles and the traffic upon and the condition of any such public highway. . . . "

Respondent was obligated to observe this statute.

Respondent testified that he applied his brakes while approximately thirty feet from the oil truck. It must be assumed that he did so. Asked if, when he first looked away from his side of the road and ceased to observe the oil truck, the latter had commenced to stop, respondent answered, "I would say that it had not," and stated later that when he looked away he had no reason to believe that the truck was slowing down. According to respondent's version, appellant's truck had not commenced to slow down when he ceased observing it, but had come to a complete stop when he next looked at it. In other words, a large, brightly colored and conspicuous oil truck, weighing, with its load, eighteen thousand pounds, reduced its speed from thirty-five miles per hour to zero while respondent, proceeding at forty to forty-five miles per hour, from a point two hundred fifty feet behind the truck, focused his attention upon the pick-up truck, which vehicle, while it might arouse his curiosity, had nothing to do with the driving of respondent's car. It

does not appear that respondent regarded the pick-up truck as a menace to him, as it did not cause him to reduce his speed.

As we assume that appellant's driver was negligent in stopping the truck on the trestle, in the absence of any emergency requiring such an act, Rem. Rev. Stat., Vol. 7A, §§ 6360-107 and 6360-110 [P. C. §§ 2696-865, 2696-868], cited by respondent, need not be considered.

Respondent also cites Rem. Rev. Stat., Vol. 7A, § 6360-85 [P. C. § 2696-843], concerning the giving of arm signals by the driver of a car intending to change his direction or stop. The pertinent portion of this section reads as follows:

"If he intends to stop he shall extend his arm from the left side of such vehicle with his forearm lowered vertically continuously for a reasonable length of time. For the purpose of this section, a reasonable length of time shall be that time required to traverse a distance in feet equal to five times the maximum speed in miles per hour allowed by law during the approach to the point of turning or stopping."

Respondent argues that this section required appellant's driver to give the arm signal for the length of time required for him to travel two hundred fifty feet, at the speed at which he was traveling; in other words, that irrespective of speed, the signal must be given continuously while the car proceeds two hundred fifty feet. This is not the meaning of the statute, which requires the giving of a signal for a specified period of time, not distance, the time to be fixed by the time required for a car moving at the maximum lawful speed to cover a distance in feet equal to five times that speed.

Respondent argues that he continued to watch the pick-up truck driven by Mr. Warfield, until he had passed it. He repeatedly calls attention to the fact that he at no time looked away from the highway,

and that both the pick-up truck and appellant's truck were within his line of vision until he passed the former, and of course appellant's truck should have his particular attention thereafter. He insists that he was looking at the road ahead of him at all times, seeing that which was on the road, and looking out for that which might be a source of danger. Notwithstanding this careful observation which respondent insists he made, he did not see the oil truck commence, and continue, to slow down, but continued his former rate of speed until he saw the oil truck apparently stopped, very close and directly in front of him. Even then, respondent did not apply his brakes until within thirty-five feet of the oil truck. Appellant's truck traveled at least seventy feet after it commenced to slow down. No witness except respondent testified that the oil truck was motionless at the time of the collision, the other witnesses testified that it was slowing down preparatory to a stop. In any event, the very conspicuous oil truck was at all times plainly visible to respondent, who continued following immediately in its trace, without lessening his speed or applying his brakes, until he was within thirty-five feet of it.

Respondent cites authorities following the rule laid down in 3 Blashfield Cyc. of Automobile Law and Practice, 144, § 1748, to the effect that where other vehicles or travelers along the highway are so close to a motorist that they may possibly collide with his car, and are being negligently or improperly driven, thereby causing a 'reasonable apprehension of danger and distracting his attention, causing some relaxation in the care with which he looks or listens for an approaching danger, that may be a factor of importance in determining whether such incomplete attention was reasonable and sufficient, under the circumstances.

We find no occasion in the case at bar to apply the rule relied upon by respondent. The highway was twenty-four feet wide, the pick-up truck was on its proper side thereof, and it does not appear that it anywise menaced respondent's safety. Referring to Mr. Warfield, respondent simply testified that he was wondering who Warfield was motioning to.

In the case of *Ritter v. Johnson*, 163 Wash. 153, 300 Pac. 518, 79 A. L. R. 1270, it appeared that the defendant (appellant before this court) was traveling at thirty miles an hour, two car lengths behind another car. There was considerable traffic on the road, and we held that, under the circumstances, the defendant "was required to maintain careful and continual observation of the car ahead of him in order to avoid a collision with that machine." We stated:

"The rule laid down by this court equally requires the driver of an automobile to keep such distance from a car ahead of him and maintain such observation of such car that an emergency stop may be safely made."

The judgment against the defendant was affirmed.

In the case of *Silverstein v. Adams*, 134 Wash. 430, 235 Pac. 784, this court held that a person, who testified that he looked and did not see an object which was plainly there to be seen, is bound to the same extent as though he had seen the object. This rule has been consistently followed by this and many other courts. Respondent vigorously contends that he was watching the road ahead of him and observing what was on it, but he did not see that the oil truck was slowing down, until it was too late to avoid striking it.

In the case of *Larpenteur v. Eldridge Motors*, 185 Wash. 530, 55 P. (2d) 1064, a jury brought in a verdict in favor of the plaintiff, in an action by one who was riding a bicycle following an automobile, and who suffered injuries as the result of a collision between

the bicycle and the car, the latter having made a sudden stop. The trial court granted the defendant's motion for judgment in its favor notwithstanding the verdict, and on appeal the judgment was affirmed. The plaintiff was following the automobile at a distance of eighteen or twenty feet. The automobile suddenly stopped, without warning, with the result that the plaintiff collided with the car and was injured. In the course of the opinion we said:

"The conduct of the appellant was not the exercise of that care required of him while following the automobile. He had the right, of course, to follow traffic at a reasonable and safe distance, but he was also under the duty of reasonably governing his speed and maintaining such a reasonable distance back of the automobile and such reasonable lookout ahead as would provide for the contingency of the sudden stopping of the car in front of him.

"With respect to automobiles, the rule in such cases is stated, generally, in 2 Blashfield Cyclopedia of Automobile Law and Practice (1935 Ed.) 94, § 942, as follows:

" 'A motorist has right to follow another motorist at reasonable and safe distance. However, he must govern his speed or keep back a reasonably safe distance so as to provide for the contingency of a car in front suddenly stopping, maintaining a proper lookout for the car immediately preceding him, and so that he can stop without a collision, or can turn out sufficiently to pass the vehicle in front without going across the street in the way of traffic approaching from the opposite direction, as that will naturally result in collision with such traffic.' "

We were of the opinion that the evidence demonstrated that the plaintiff "was either not maintaining a proper lookout or else that his speed was too great to provide a fair margin of safety under the circumstances." The principles relied upon should apply to

any following vehicle, with due regard to differing conditions and circumstances.

The cases of *Fuld v. Maryland Casualty Co.*, 178 So. (La. App.) 201, and *Smith v. Chadick-Hayes Co.*, 19 La. App. 523, 139 So. 689, discuss the burden which rests upon the driver of a following car to carefully observe the preceding traffic and maintain speed and distance consistent with safety.

■ Bearing in mind the rules applicable in considering a motion for judgment notwithstanding a verdict, as stated in the case of *Larpenteur v. Eldridge Motors, supra,* and giving respondent the benefit of the rules referred to, we are nevertheless of the opinion that from the record before us it must be held that respondent was guilty of contributory negligence which materially and proximately contributed to the damages which he suffered.

The judgment appealed from is accordingly reversed, with instructions to dismiss the action.

ROBINSON, C. J., STEINERT, JEFFERS, SIMPSON, and DRIVER, JJ., concur.

MILLARD, J. (dissenting)—This action was brought by plaintiff against defendant corporation to recover for property damage and for personal injuries sustained by plaintiff as a result of the collision of his automobile with the rear end of a truck, owned and operated by defendant, on the Stevens Pass highway a short distance east of Everett.

Plaintiff alleged negligence on defendant's part in stopping its truck on the highway without any signal or warning to plaintiff, who was following the truck in his automobile. Defendant denied any negligence and pleaded as an affirmative defense contributory negligence of plaintiff in following defendant's truck too closely, driving at an excessive speed, failure to have

his automobile under control, and failing to look where he was going.

At the close of plaintiff's case, defendant moved for an involuntary nonsuit, demurred to the evidence, and moved for a directed verdict on the ground that plaintiff was guilty of contributory negligence which, as a matter of law, barred recovery. After both sides rested defendant renewed the motions. The motions and demurrer were overruled. Trial of the cause to a jury resulted in a verdict in favor of the plaintiff. From the judgment entered on the verdict, motions for judgment notwithstanding the verdict and for a new trial having been overruled, the defendant appealed.

The first contention of counsel for appellant that the trial court erred in denying the motions for nonsuit, directed verdict, and judgment notwithstanding the verdict, on which is based the argument that the evidence adduced precluded any right of the respondent to recover, can not be sustained, unless we can say, as a matter of law, that there is neither evidence nor reasonable inference from the evidence to justify the verdict.

It should be borne in mind that all competent evidence in the record which is favorable to the respondent we must regard as true and we must give to him the benefit of every favorable inference which may reasonably be drawn from such evidence. Where the minds of reasonable men may differ the question should be submitted to the jury. If, when so considered, we find there is substantial evidence to sustain the verdict the judgment must be affirmed. *Gibson v. Spokane United Railways,* 197 Wash. 58, 84 P. (2d) 349; *Pyle v. Wilbert,* 2 Wn. (2d) 429, 98 P. (2d) 664.

An apt statement of the rule was made as follows

by the supreme court of Minnesota in *Mechler v. McMahon,* 180 Minn. 252, 230 N. W. 776:

"The test as to whether a question of law or fact is presented must be applied with caution lest the courts usurp the functions of the jury. There should however be no hesitancy, where a proper situation arises, in determining that the question is one of law. It is only in the clearest of cases when the facts are undisputed and it is plain that all reasonable men can draw but one conclusion, that the question of contributory negligence becomes one of law."

In the vast majority of automobile accidents, the question whether the conduct of the one charged with responsibility for the accident amounts to negligence (or contributory negligence) is one calling for the exercise of human judgment, upon which men are unlikely to agree.

"Where the nature and attributes of the act relied upon to show negligence, constituting a proximate cause of the injury complained of, can only be clearly determined by considering all the attending and surrounding circumstances of the transaction in question, it falls within the province of the jury to pass upon the character of such circumstances. . . .

"If the evidence on the question of negligence is conflicting or such that reasonable men can draw different conclusions therefrom, the question is one for the jury." 10 Blashfield Cyc. of Automobile Law and Practice (Perm. ed.), 239, § 6594.

In the recent case of *Schofield v. Northern Pac. R. Co.,* 4 Wn. (2d) 512, 104 P. (2d) 324, we said:

"In this state, usually, the question of proximate cause is for the jury, and it is only when the facts are undisputed and the inferences therefrom are plain and incapable of reasonable doubt or difference of opinion, that it may be a question of law for the court. *Hellan v. Supply Laundry Co.,* 94 Wash. 683, 163 Pac. 9; *Caylor v. B. C. Motor Transportation,* 191 Wash. 365, 71 P.

(2d) 162; *Bracy v. Lund,* 197 Wash. 188, 84 P. (2d) 670."

That the question of respondent's contributory negligence—the verdict of negligence against appellant is not challenged—was a question of fact for the jury under the applicable rules stated above is clear from a reading of the facts, which are summarized as follows:

On December 10, 1937, at approximately nine o'clock a. m., an employee of appellant was operating appellant's truck in an easterly direction from Everett on the Everett-Cavelero Corners bridge at a speed of about thirty-five miles an hour. This bridge, or trestle, is about one and one-fourth miles long, perfectly straight, and practically level its entire length. From the west end of the trestle to Cavelero Corners at the east end there are no cross roads. That portion of the trestle available for traffic is twenty-four feet wide, paved with concrete, and at a height of eight to ten feet above the ground. It was not raining at the time of the accident but it had been raining earlier that morning and the pavement, which has a rough surface, was wet. The truck operated by appellant's driver was a one and one-half ton truck carrying six hundred and five gallons of gasoline and having space for several drums of lubricating oil. The truck was eighteen feet long and weighed as it was then loaded about eighteen thousand pounds. The body of the truck was painted bright yellow, the hood and fenders a bright red.

The same morning about eight forty o'clock respondent departed from Everett in his Dodge coach. An egg company's truck was about one block in front of respondent and traveling in the same direction. Respondent followed the truck about a mile and passed it near the curve leading to the trestle above mentioned. As he passed that truck at the west end of the trestle

respondent was proceeding easterly, the same direction in which appellant's truck was proceeding. Immediately after passing the egg company's truck he saw appellant's truck about thirteen hundred and twenty feet ahead of him on the trestle. There was nothing between appellant's truck and respondent's automobile at that time, hence respondent experienced no difficulty in seeing the truck. From the west end of the trestle to the point where the collision occurred is approximately one mile.

After passing the egg company's truck respondent's speed was from forty to forty-five miles an hour—a lawful rate of speed—and the speed of appellant's truck was approximately thirty-five miles an hour. When respondent was two hundred to two hundred and fifty feet behind appellant's truck he noticed a pipe-line truck, which is designated by the parties as a "pick-up" truck, approaching from the east, proceeding in a westerly direction, about alongside, or parallel with, appellant's truck. At that time appellant's driver had not commenced to diminish the speed of appellant's truck.

The driver of the pick-up truck was standing partly within and partly without the cab of his truck with one foot on the running board, one foot near the throttle and the brake pedal and the pick-up truck was traveling in low gear at a speed, it was testified, of about one mile an hour. The pick-up truck was towing a gasoline water pump which the driver of the pick-up truck was watching to see that it did not become detached from the truck. The driver of the pick-up truck stated that he was waving one of his hands at appellant's operator at the time and that appellant's truck was slowing down at the time respondent's automobile collided with appellant's truck. He testified:

"Q. You just tell us in your own words, will you, just what you saw, and what happened there? A. Well, I was running along there real slow and watching this pump and kind of watching the road ahead of me and behind me, and down the road came a Shell Oil truck, and being from delivering gasoline on our job, and around in town, and close to town, why I knew the driver by sight, so I waved to him, and we exchanged greetings and each slowed down. Of course, I was going real slow. He thought maybe I was stopping, or something, I guess, and he slowed down about to a slower gait than he had been going and then continued on, and about that time Mr. Cronin, who I didn't know at that time, came driving along in his car, and run into the back end of this Shell truck. Q. Right at that point, were you looking at the two vehicles at the time they actually came together? A. Yes, sir, I saw them both there. Q. I will ask you whether or not the Shell truck had stopped at that time, or was it moving forward? A. The truck was moving."

Respondent's attention was diverted toward the pipe-line truck, the gasoline water pump which was being towed by the pipe-line truck, and the man on the truck who was waving to some one. At that time there was nothing indicative of intention of appellant's driver to halt appellant's truck. When two hundred to two hundred and fifty feet behind appellant's truck, at which time the pick-up truck came into the picture, respondent testified that "I had my eye on the Shell truck. At that time there was no indication of his stopping. . . ."

Respondent's attention was diverted five or six seconds towards the pick-up truck. He watched that pick-up truck until it passed appellant's truck, when respondent noticed appellant's truck was motionless or was stopping. At the time of the collision, appellant's truck was not in motion. Respondent testified:

"Well, I naturally watched this here pipe-line man that was doing all the waving; I was wondering who he

422

was motioning to, and I glanced back at the road, and here this Shell truck was apparently stopped in front of me. Well, my first thought was to go around him. I glanced up and here was this pulp-wood truck coming, so close that if I swung out I was going to take the pulp-wood truck on at the front there, and that would be all my fault, and it would be dangerous for a head-on collision, so the best thing I could do was to try to stop and go into the back end of the Shell truck. . . . Q. Will you state whether or not the Shell truck was stopped at the time of the collision? A. I would say it was stopped."

There is ample evidence that appellant's truck was motionless at the time of the collision. When respondent noticed appellant's truck was stopped, or stopping, respondent's automobile was seventy-five feet—measured in time by respondent's speed, not more than one and one-third seconds—behind appellant's truck. The pick-up truck in the north lane was a sufficient distance west of appellant's truck to permit respondent to pass appellant's truck. Respondent's purpose at that stage to pass appellant's truck could not be accomplished by reason of the presence of a pulp wood truck proceeding westerly in the north lane about thirty or forty feet east of appellant's truck. During this space of time respondent's automobile traversed, of the distance of seventy-five feet between his automobile and appellant's truck, thirty-five or forty feet. Respondent then applied his brakes but it was too late to avert collision of his automobile with the rear of appellant's truck. At the time of the collision the pulp wood truck was about ten feet east of appellant's truck, and the two trucks were alongside each other immediately following the collision.

Counsel for appellant contend that respondent's violation of the statute, reading as follows, which prohibits driving at greater speed than will permit driver to stop

within assured clear distance ahead, constitutes contributory negligence as a matter of law and bars recovery:

"It shall be unlawful for the operator of any motor vehicle to follow another vehicle more closely than is reasonable and prudent, having due regard for the speed of such vehicles and the traffic upon and the condition of any such public highway. . . ." Rem. Rev. Stat., Vol. 7A, § 6360-81 [P. C. § 2696-839].

It is insisted that there is no room for reasonable minds to differ on the conclusion that respondent was not operating his automobile at a reasonable and proper speed when there was other traffic ahead which he knew he was overtaking and when he did not have his eyes on the road ahead of him. Counsel for appellant cite a number of authorities which, it is argued, sustain appellant's position.

In *Ritter v. Johnson,* 163 Wash. 153, 300 Pac. 518, 79 A. L. R. 1270, the appellant was operating his automobile at approximately thirty-five miles an hour *two car lengths* behind an automobile which suddenly stopped. In order to avoid collision with the car ahead, appellant swerved to the left and struck a car coming from the opposite direction. The cause was tried to the court, which found in favor of the plaintiffs who were operating the car struck by appellant's car. On appeal, the judgment was affirmed on the ground that appellant was following another car when there was considerable traffic and failed to keep such a distance from, and maintain such observation of, the car ahead that an *emergency stop* could be safely made; failing to observe as his companion did, the *red light brake signal* when that car slowed down in an emergency stop. That case is clearly distinguishable on the facts from the case at bar.

*Graves v. Mickel,* 176 Wash. 329, 29 P. (2d) 405, is

not in point, it is patent from a reading of the facts. In that case plaintiff Jones, traveling at the rate of forty miles an hour, crashed into the rear of a truck, stalled on a hill, which was plainly visible for two hundred feet and *so parked as to leave ample space to pass it,* many cars having passed the truck in both directions preceding the accident. Plaintiff's automobile was equipped with good lights and proper brakes. One small light was burning at the rear of the truck about ten feet above the ground. We held that Jones was guilty of such contributory negligence, as a matter of law, that recovery was barred.

Neither is *Larpenteur v. Eldridge Motors,* 185 Wash. 530, 55 P. (2d) 1064, applicable. In that case, in which we held that a bicycle rider was guilty of contributory negligence, as a matter of law, which barred recovery, the bicyclist was following the defendant's automobile at a distance of eighteen or twenty feet, and at a speed of about twenty miles an hour. He crashed into the rear of the automobile, the speed of which was the same as that of the bicyclist (twenty-nine feet a second), which stopped suddenly in front of him. The basis of our holding was that the bicyclist was not maintaining such a reasonable distance back of the automobile and such reasonable lookout ahead as would provide for the contingency of the sudden stopping of the car in front of him.

*McGehee v. Hines,* 12 La. App. 13, 124 So. 846, is not in point. In that case the complaining party took no precaution. He carelessly drove his automobile into the rear end of a grading outfit in the road ahead of him for nearly a mile before he came to it. The road was about twenty feet wide and the left-hand side was open. There was ample space and sufficient time in which the driver of the automobile could have moved

to the left-hand side of the road and averted the collision.

In *Barnes v. Bailey,* 134 Me. 503, 187 Atl. 758, the automobile in which the plaintiff was riding collided with a truck driven by the defendant at or near the intersection of two roads. The defendant observed the approach of plaintiff's automobile but fixed his attention on another automobile on the opposite side of the road on which he was driving and neglected to see the approaching automobile of plaintiff enter the intersection until too late to avoid collision. Verdict was returned in favor of plaintiff. Defendant's motion for new trial was overruled. On appeal the judgment on the verdict was sustained.

In *Weis v. Davis,* 28 Cal. App. (2d) 240, 82 P. (2d) 487, the plaintiff sought recovery for injuries sustained in an automobile collision. From judgment entered on the verdict in favor of the plaintiff, the defendant appealed. The judgment was affirmed. The question, which was one of fact determined by the jury, was whether the salesman, demonstrating the automobile to a prospective purchaser who was riding with him, was guilty of negligence which was the proximate cause of the collision of that automobile with another car. While demonstrating the automobile, the salesman turned toward the prospective purchaser, while driving seventy-two miles an hour, and called attention to the automobile's performance. Immediately afterwards that automobile struck an approaching automobile.

*Knutsen v. Dilger,* 62 S. D. 474, 253 N. W. 459, is certainly not apposite. In that case it was held that the question of negligence of the host, in driving forty to fifty miles an hour over a rough road in an automobile with oversized tires on rear wheels only, looking at oil gauge, losing control of his automobile, and tipping

over in ditch causing guest's death, was one of fact for the jury.

· *Bolton v. Wells*, 58 N. D. 286, 225 N. W. 791, was decided by a jury in favor of the plaintiff and on appeal of defendant was affirmed. The holding is that, where there is evidence showing that the driver was exceeding the speed limit while driving over icy roads and while so engaged took his gaze from the road and at the time of this momentary withdrawal of attention the car swerved, skidded, and upset, causing injury to the automobilist's guest, it was proper for the court to submit to the jury the question whether under such circumstances the operator of the automobile was guilty of negligence.

*Copeland v. Russell*, 290 Mass. 542, 195 N. E. 541, is not apt. In that case the defendant was negligent in that, while operating an automobile, he took both hands off the wheel and reached around to lift a three-year old child from the rear into the front seat and while so engaged his automobile crashed against a tree on the side of the road.

*Green v. Hoffarth*, 277 Mass. 508, 178 N. E. 828, is inapt. There the court held that the automobilist who collided with a parked truck was grossly negligent in not keeping careful lookout while driving automobile rapidly on foggy night.

*Meeney v. Doyle*, 276 Mass. 218, 177 N. E. 6; *Smith v. Axtman*, 296 Mass. 512, 6 N. E. (2d) 809; *Crowley v. Fisher*, 284 Mass. 205, 187 N. E. 608, and *Tannehill v. Kansas City, C. & S. R. Co.*, 279 Mo. 158, 213 S. W. 818, are distinguishable on the facts from the case at bar.

In *Ege v. Born*, 212 Iowa 1138, 236 N. W. 75, a motorcycle policeman, at request of truck driver, was assisting the latter in testing speedometer. In so doing they were proceeding along a street forty feet in width. The truck collided with a wagon or buggy

proceeding in the same direction. The right wheels of the buggy were only three feet from the right curb which left ample room for the truck to pass. In that case no explanation was offered for the automobile driver's failure to see. It was a bright, clear day and there was nothing to becloud the driver's vision. There was no sudden emergency and no distracting circumstances unless, as the court said, it was the testing of the speedometer, which circumstance was of the driver's own voluntary making. The court expressed the view that such diverting or distracting circumstance was not sufficient to excuse the driver of the vehicle for failure to see what he must have seen had he looked; that it was his duty to keep a lookout and to see what he must have seen had he looked; and that, in the absence of sufficient distracting circumstances, it becomes the duty of the driver to look and to see what is plainly visible in the street ahead of him. In the case at bar there was a distracting circumstance which was not self-induced or of the respondent's own voluntary making, hence the citation does not tend to support appellant's position. The truck driver in the cited case was not paying *any* attention to traffic.

*Spencer v. Magrini*, 115 Wash. 29, 195 Pac. 1041, is also inapplicable. In that case, which was tried to the court, it was held that the driver of an automobile in a city, who drove his automobile into a car ahead when it turned out to avoid a car parked at the curb, is guilty of contributory negligence where he was *following within four or five feet of the car ahead.*

In *Williams v. Cowlitz County*, 177 Wash. 218, 31 P. (2d) 84, 36 P. (2d) 1119, we held that plaintiff was guilty of contributory negligence, as a matter of law, where it appeared plaintiff was driving in the center of the road with lights and brakes in perfect condition and hit a post in the center of the road at a bridge

approach at the instant of seeing it. Plaintiff testified that she could have at any time stopped her car within the radius of her lights. Her approach to the bridge was along a road straight for more than seven hundred feet.

In *Meyer v. Miller*, 184 Wash. 393, 50 P. (2d) 1018, the driver of plaintiff's car was held guilty of contributory negligence as a matter of law. In that case the driver observed an unlighted parked car at the curb which she turned out to avoid. She then observed another vehicle approaching from the opposite direction three hundred feet away. She then swerved over to her own lane of traffic and collided with the unlighted parked car which was parked about eighty feet beyond the first car she observed. The contributory negligence was her failure to pass the parked car in safety or her failure to see it and avoid it. That case is also distinguishable on the facts from the case at bar.

In *Reincke v. Tacoma R. & P. Co.*, 138 Wash. 304, 244 Pac. 577,—distinguishable on the facts from the case at bar—we held that a plaintiff, who drove his automobile into a truck standing in a lighted city street at night without seeing the truck until ten feet away, when it could have been plainly seen for hundreds of feet, is guilty of contributory negligence precluding a recovery as a matter of law.

A review of all of the authorities cited by appellant would extend this opinion to an unjustifiable length. Some of those cases have to do with a situation where one vehicle was following another more closely than was reasonable and prudent, and the operator of the overtaking car was not keeping a proper lookout. In the cited cases the driver either looked away from the highway at a theater sign, watched an aeroplane to the exclusion of everything else, confined his attention to

his oil gauge, turned to some one in the rear seat, took both hands from the steering wheel, or was guilty of some other equally inexcusable conduct, hence the authorities cited present situations which distinguish those authorities from the case at bar.

In the case at bar respondent was two hundred to two hundred and fifty feet behind appellant's truck when appellant's truck commenced to stop. If that truck and respondent's automobile had maintained their respective speeds, respondent would not have overtaken appellant for more than one thousand feet from that point. This is hardly following more closely than is reasonable and prudent, having due regard for the speed of the vehicles and the traffic upon and the condition of the highway.

"The driver of a car following a few feet behind another, under circumstances such that he should anticipate the possibility of obstruction or trouble of some sort, should have his car under such control or proceed at such a rate of speed that he can stop at once if the car in front stops.

"The only rule that can govern the interval to be maintained is that of reasonable care under the circumstances. The mere fact that a vehicle is moving in close proximity to a moving vehicle ahead and keeping up with it does not of itself constitute negligence. In determining whether or not a driver was negligent in not maintaining a proper distance between his automobile and the one preceding him, the speed at which he was traveling, the condition of the road, the amount of traffic, the condition of his brakes, and his ability, acting with ordinary care, to stop his car if required so to do by a situation not produced by another's negligence, should be considered.

"The mere fact that a motorist collides with a car preceding him along the highway does not invoke the doctrine of res ipsa loquitur, thereby placing a presumption upon him of negligence in following too close. The question of whether one vehicle trails another so closely as to constitute negligence, contributing to an

accident due to the sudden stopping of the forward vehicle, depends on the circumstances, and is usually for the jury, or the trial judge sitting without a jury." 2 Blashfield Cyc. of Automobile Law and Practice (Perm. ed.), 94, § 942.

There were only three vehicles traveling in an easterly direction over a mile and one-eighth or a mile and one-fourth of highway. The first vehicle was appellant's truck, the second was respondent's automobile, and the third was the egg company's truck which was a long distance to the rear. Under such circumstances, we repeat, it can not be said, as a matter of law, that respondent was traveling more closely than was reasonable or prudent when he was from two hundred to two hundred and fifty feet behind appellant's truck.

The argument that respondent was guilty of inexcusable carelessness, in failing to keep his eyes on the road ahead of him, is not sound. In the first place *the evidence is* to the effect *that respondent kept his eyes on the road ahead of him.* In the second place, *respondent's watching* of the pick-up truck *did not constitute contributory negligence as a matter of law.*

Appellant had no right to stop on the bridge. He was not confronted with any emergency. Under the statute (Rem. Rev. Stat., Vol. 7A, § 6360-107 [P. C. § 2696-865]) he was forbidden to stop, stand, or park his truck, except when necessary to avoid conflict with other traffic or in compliance with the direction of a peace officer or traffic control device, upon any bridge or other elevated structure upon a highway or within a highway tunnel.

Appellant was guilty of infraction of another section of the highway code, with which respondent had a right to presume the appellant would comply. Rem. Rev. Stat., Vol. 7A, § 6360-110 [P. C. § 2696-868], for-

bids the parking or standing of any vehicle on the traveled portion of any public highway outside incorporated cities and towns when it is possible to stop or park such vehicle off such traveled portion of the highway. This section does not apply to the operator of a disabled vehicle. There is no contention that appellant's truck was disabled.

Respondent also had the right to rely on Rem. Rev. Stat., Vol. 7A, § 6360-85 [P. C. § 2696-843], which provides that:

"It shall be the duty of every person operating a vehicle upon any public highway and intending to turn from a standstill or while in motion intending to turn or stop, to give a timely signal from the left-hand side of such vehicle indicating the direction in which he intends to turn or that he intends to stop, as follows: If he intends to turn to the left he shall extend his arm in a horizontal position from the left side of such vehicle continuously for a reasonable length of time; if he intends to turn to the right he shall extend his arm from the left side of the vehicle with his forearm raised vertically continuously for a reasonable length of time; if he intends to stop he shall extend his arm from the left side of such vehicle with his forearm lowered vertically continuously for a reasonable length of time. For the purpose of this section, a reasonable length of time shall be that time required to traverse a distance in feet equal to five times the maximum speed in miles per hour allowed by law during the approach to the point of turning or stopping."

The maximum speed permitted by statute at the scene of the collision is fifty miles an hour, therefore it was incumbent upon appellant's driver to give the signal prescribed by the statute for a reasonable length of time, which in this case is two hundred and fifty feet, being the time required to traverse a distance in feet equal to five times the maximum speed of fifty miles an hour allowed by law during the approach to the point of stopping. The jury was war-

ranted in finding there was nothing from which respondent could anticipate, nor was there anything to put respondent on notice, that appellant might stop his truck on the bridge.

Respondent was traveling at a rate within the maximum speed limit and he was not driving, as the jury found and was warranted in finding, at an excessive speed under the circumstances. Traveling along this highway and until such time as he was reasonably apprised of an intention of another user on that highway, ahead of him, to stop on that highway, respondent had a right to travel at the speed at which he was proceeding, and it was incumbent upon appellant to give him timely notice of intention to stop the truck on the highway.

If the operator of appellant's truck intended to stop, he should, as the statute requires, have extended his arm from the left side of the truck with his forearm lowered vertically continuously for a reasonable length of time, which in this case would have been for a distance of two hundred and fifty feet. Had this been done when respondent was from two hundred to two hundred and fifty feet to the rear of appellant's truck, or when respondent was seventy-five feet behind appellant's truck, respondent would have been afforded an opportunity to diminish his speed, or stop, in an endeavor—he might have succeeded in that effort—to avoid collision with appellant's truck. We reiterate that, until aware of the intention of appellant's driver to stop the truck, respondent had the right to rely on compliance by appellant's driver with the statutory mandate to give timely warning by an appropriate signal of his purpose to stop the truck.

If an automobilist is aware of a dangerous situation on the highway, or he is charged with knowledge of the dangerous situation, and he is prevented from

avoiding it by reason of his attention being momentarily diverted from the danger, the automobilist is not necessarily guilty of contributory negligence; the question is one of fact for the determination of the jury.

A dangerous situation existed by virtue of the stationary position of appellant's truck on the bridge. That stop, it should be remembered, was not one of emergency or in obedience to traffic signals. It can not consistently be held that the failure of respondent to anticipate that situation, or to discover it within time to avert the collision, constituted contributory negligence, as a matter of law, in view of the fact that his attention was momentarily diverted from the danger by the conduct of the driver of the pick-up truck and by the conduct of the operator of appellant's truck.

Where another vehicle, such as the pick-up truck, is so close to a motorist and is being so negligently or improperly operated as to cause the motorist to be reasonably apprehensive of danger from such vehicle, thereby distracting his attention and causing a relaxation in the care with which he watches the highway ahead, such situation constitutes a factor of importance in the determination of the question whether such incomplete attention as he gave to the traffic—appellant's truck—immediately ahead of him in his lane was reasonable and sufficient under the circumstances, and presents a question of fact for consideration of the jury. It is analogous to the situation where an automobilist's attention is diverted from the thought of the danger to be apprehended at a railroad track by conditions or circumstances then existing at or near the track or crossing, which diversion of attention may excuse the automobilist's failure to look or listen at the last practicable moment. 3 Blashfield Cyc. of Automobile Law and Practice (Perm. ed.), 142, § 1748.

A traveler upon a public highway has a right to

assume, within reasonable limits, that others using the highway will exercise reasonable care and will obey the traffic regulations, and the failure to anticipate the omission of such care does not render him negligent until the contrary is brought to his attention. That is, respondent was not required to anticipate that appellant's truck would, without warning, stop on the bridge. Of course, it was the duty of respondent to do that which a reasonable man, under the same circumstances, would have done to avoid collision with the truck when he discovered the peril. Whether he so acted was a question for the jury.

"The question as to whether the failure of the driver of an automobile to keep a proper lookout is a proximate cause of his collision with another machine is ordinarily for the jury." 10 Blashfield Cyc. of Automobile Law and Practice (Perm. ed.), 282, § 6602.

In *Jacklin v. North Coast Transportation Co.*, 165 Wash. 236, 5 P. (2d) 325, we held that the negligence of a bus driver in running into the rear of a bus ahead, when the latter stopped in obedience to a traffic signal, is a question for the jury, where there is evidence that he was following down hill with a heavy bus at a distance of thirty feet at a speed of fifteen miles an hour, or twenty-two feet a second, and when he found the air brake failed to respond he did not immediately use the emergency brake, or turn aside.

In *Grubbs v. Grayson*, 165 Wash. 548, 5 P. (2d) 1033, we held that the negligence of the defendant in colliding with an automobile ahead is a question for the jury, where there was evidence that he failed to see a red tail light which was burning, and where, in any event, he could have stopped in time if driving at a speed no greater than was reasonable and proper. We said:

"It can not be said, as a matter of law, that the appellant was free from negligence in colliding with the respondent's automobile, even though the taillight was not burning. Whether he was driving in a careful and prudent manner, at a speed no greater than was reasonable and proper under the conditions then existing, and keeping a proper lookout, were questions of fact and not of law."

We held, in *Harry v. Pratt*, 155 Wash. 552, 285 Pac. 440, that the negligence of a driver of a car, which hit a car ahead when it stopped and was thrown against a pedestrian on the dirt shoulder of the pavement, is a question for the jury, in view of the statute requiring careful and prudent driving, where the jury would be warranted in finding negligence from his speed and nearness to the car ahead with the balance of the pavement taken up by another car approaching from the opposite direction.

In *Mechler v. McMahon*, 180 Minn. 252, 230 N. W. 776, it was held that it is only in the clearest of cases when the facts are undisputed and it is plain that all reasonable men can draw but one conclusion, that the question of contributory negligence becomes one of law. In that case, in which it was held that the question of plaintiff's contributory negligence was one of fact for the jury and not one of law for the court, the accident occurred November 9, 1928, about seven thirty p. m. The night was dark and misty with a drizzling rain; the pavement was slippery. Plaintiff was traveling at thirty-five miles an hour in the same direction as the truck with which he collided was headed. The headlights of plaintiff's car were burning, and an automatic windshield wiper was operating. When about seventy or eighty feet away plaintiff observed defendant's truck which at first he thought was moving. In an instant he became aware of the fact that the unlighted truck was stationary, applied his

brakes and turned his steering wheel to the left for the purpose of passing·around the truck. His car failed to respond and skidded into the rear of the truck. He could not stop his car under the conditions in the distance of seventy or eighty feet, which was the range of illumination of his headlights. If plaintiff's car had responded to the steering wheel, plaintiff probably could have passed the truck.

In *Peterson v. Doll,* 184 Minn. 213, 238 N. W. 324, the accident occurred July 1, 1929, about seven p. m. in broad daylight, with the sun shining. Both plaintiff and defendant were driving eastward on the right-hand side of· the pavement; plaintiff in a half-ton truck was following the defendant, who was driving a sedan. Both were proceeding at approximately twenty-five to thirty miles an hour. There were no obstructions to the view of either and no other conveyance was in sight in either direction. There were no distracting circumstances. Plaintiff was watching defendant's car continually. The pavement was dry. Suddenly, without any warning or signal, when plaintiff's truck was forty-five to seventy-five feet behind defendant's sedan, the latter stopped. Plaintiff immediately applied his brakes and turned his car to the left as speedily as possible but did not clear the car ahead of him. The left rear side of defendant's car was struck a glancing blow by plaintiff's car. Plaintiff's action to recover for injuries thereby sustained resulted in verdict in his favor. On defendant's appeal the supreme court of Minnesota, held, following *Mechler v. McMahon, supra,* that the question whether plaintiff was guilty of contributory negligence was one of fact for the jury.

In *Starr v. Rossin,* 302 Ill. App. 325, it was held that, where plaintiff's automobile followed defendant's at distance of thirty-five to forty-eight feet, both automobiles traveling thirty-five to forty miles an hour, and

plaintiff's automobile collided with defendant's when latter made abrupt stop to make left turn without giving signal, question of contributory negligence was for the jury, as it was not negligence as a matter of law for plaintiff to follow defendant at such distance. See, also, *Cook Paint & Varnish Co. v. Hickling,* 76 F. (2d) 718.

Appellant assigns as error the refusal of the court to give to the jury the following requested instruction No. 9:

"You are instructed that the law of the State of Washington provides as follows:

" 'It shall be unlawful for the operator of any motor vehicle to follow another vehicle more closely than is reasonable and prudent, having due regard for the speed of such vehicle and the traffic upon and the condition of any such public highway.' "

By instruction No. 10, to which appellant did not except, the court charged the jury:

"You are instructed that the driver of any automobile has the right to follow traffic, or pass a preceding vehicle at a reasonable and safe distance but in doing such he is under the duty of reasonably governing his speed and maintaining such a reasonable distance back of the preceding vehicle, and such reasonable look-out ahead, as would provide for the contingency of the sudden stopping of the car in front of him."

If the instruction given had been a verbatim copy of the statute it would not have been more informative than the instruction given in the language of the court. Error can not be predicated upon refusal of request to instruct in the language of the statute, word for word, where the court gave the substance of the statute applicable to the case. *Lindsey v. Elkins,* 154 Wash. 588, 283 Pac. 447.

The court's instruction, to which appellant did not except, covered the law respecting the duty of a driver following another car, and appellant has no cause for complaint as the instruction given was more favorable to it than the facts justified. In appellant's proposed instruction, the only restraint placed upon respondent was that he not follow another vehicle more closely than is reasonable and prudent, having due regard for the speed of such vehicle and the traffic upon, and the condition of, any such public highway. The traffic upon the highway, the speed of the vehicle, and the condition of the highway are not subjects of dispute. The parties are in accord on the facts as to these three items. The instruction given by the court not only charged the jury that the duty was imposed upon respondent of reasonably governing his speed and maintaining a reasonable distance to the rear of the preceding vehicle, but also instructed the jury that it was incumbent upon respondent to keep a reasonable lookout ahead and that the continuance of this reasonable care must be so maintained as to provide for the contingency of the sudden stopping of the car in front of respondent. This instruction, which did not favor respondent, was more favorable to appellant than was the instruction requested by appellant.

Counsel for appellant complain of the giving of other instructions and, also, assign as error the failure to give a number of requested instructions. From an examination of all the instructions given, which must be considered as a whole, it is plain that the jury was clearly and correctly charged under the pleadings and the evidence.

I deem the majority has, in the case at bar as in *Hynek v. Seattle,* 7 Wn. (2d) 386, 111 P. (2d) 247, trespassed on the province of the jury in disregard of

the constitutional (Art. I, § 21, state constitution) guarantee that the "right of trial by jury shall remain inviolate."

BLAKE and MAIN, JJ., concur with MILLARD, J.